City of New Haven *v.* Whitney.

―――•◆•―――

CITY OF NEW HAVEN *vs.* STEPHEN WHITNEY AND OTHERS.

A city charter provided that "all expenses of making, maintaining and altering highways" should be assessed upon the inhabitants and property of the city in the same manner with other city taxes; and, in a later section, that the expenses of "any sewer or other public work or improvement" might be assessed upon the persons whose property was especially benefitted thereby. Held that the macadamizing of a street was not a "public improvement" within the meaning of the latter section, but was a "maintaining" of a street within the meaning of the former section.

A statute that prescribes that a thing shall be done in a particular way carries with it an implied prohibition against doing it in any other way.

PETITION for a foreclosure of an assessment lien upon the property of the respondents; brought to the Superior Court in New Haven county, and reserved upon a finding of the facts for the advice of this court.   The case is fully stated in the opinion.

*C. R. Ingersoll,* for the petitioners.

*J. S. Beach,* for the respondents.

BUTLER, J.   The city of New Haven macadamized a por-
tion of one of its avenues in 1865, and assessed a portion
of the expense upon the respondents as adjoining owners,
and, claiming the assessment to be a lien upon their land,
seeks to foreclose the lien by this proceeding.   The respond-
ents deny the authority of the city to make the assessment,
and deny the existence of the lien.

Prior to 1862 the avenues and highways in the city were
repaired by the town.   In that year an amendment of
the charter was made by the General Assembly, giving the
city the sole and exclusive control of all the streets and high-
ways within the city limits, and imposing upon it the expense
of making and maintaining them.   The case turns on the
construction of that statute.

The first three sections of the statute relate exclusively to
highways.   The first section constitutes the city a highway
district.   The second section provides, 1st, that the expenses
of laying out, making, maintaining, altering or discontinuing
highways &c. within the city, should thereafter be sustained
by city tax ; 2d, that no portion of the expense of laying out,
making, maintaining, altering or discontinuing highways &c.
outside of the city limits should be assessed upon the inhab-
tants and property within the city ; 3d, that all prior acts of
the selectmen within the limits of the city in relation to high-
ways should be legal and valid ; 4th, that the town should
pay to the city the unappropriated town tax intended to be
expended upon highways within the city for the then current
year.

The third section gave to the common council of the city
sole and exclusive authority and control over the entire sub-
ject matter of highways and streets, public or private, within
the city limits.

The fourth section provided that " whenever any *sewer or
other public work or improvement* shall have been *laid out, con-
structed or altered,* by order of said court of common council,
said court may assess a proportional sum of the expense of
laying out, constructing or altering the same upon any person
whose property is especially benefitted thereby." The remain-

der of this section relates to the time when the assessment should become payable and provides the right of appeal.

The fifth section makes such assessment a lien upon the property benefitted and provides for its enforcement and discharge.

The claim of the city is that the macadamizing of Whitney Avenue was not a repair of the street within the meaning of the first three sections of the act, but was a public improvement within the meaning of the fourth section. We are of opinion that it was not the intention of the legislature that any expense incurred for the repair or improvement of an existing highway should be assessed upon an adjoining proprietor.

The first three sections of the act relate exclusively to highways and are exhaustive. They provide that "all expenses of laying out, making, maintaining, altering or discontinuing highways and streets shall be hereafter assessed and levied upon the inhabitants and property of the city in the same manner that other city taxes are assessed and paid." This language is clear and conclusive; it comprehends everything that could or should be done in relation to highways. A statute that prescribes that a thing should be done in a particular way, carries with it an implied prohibition against doing it in any other way, and the intention of the legislature that all expenses incurred on account of the highways and streets of the city should be paid by a general tax, and not by special assessment, is too clear to be doubted. We see nothing in the language of the fourth section which indicates a different intent.

After exhausting the subject of highways in the first three sections, they pass, in the fourth and fifth sections, to the subject of " sewers and other public works or improvements," and provide that the expense of making, constructing or altering them may be collected in part by assessment upon the property of individuals, and prescribe the manner in which such assessment shall be made and enforced. It seems perfectly apparent from the language of the fourth and fifth sections, from the transition to a new subject, and the totally

different method provided for meeting the new expense, that the General Assembly intended no reference to the mainte- nance and repair of highways, in the use of the words "sewer or other public work or improvement." The repair of a highway, (and macadamizing is but a mode of repair,) is not in any just sense a public work or improvement. The lan- guage as used in connection with the word "sewer" imports a class of distinct public works or improvements, other than the mere repair of highways, and it would clearly be a strained and unjustifiable construction of the language to hold that it embraced the repair of highways, when that subject had been explicitly and exhaustively provided for in a preced- ing and perfectly distinct part of the statute.

For these reasons the Superior Court must be advised that the petition should be dismissed.

In this opinion the other judges concurred.