## *Ex Parte* BENJAMIN L. DUNCAN; *Ex Parte* JOHN D. T. McALLISTER.

OFFICERS.—A Territorial Marshal is neither a Federal, nor a District, nor a Township Officer.

ACT OF THE LEGISLATURE RELATING TO MARSHALS.—The Act of the Legislature of Utah entitled "An Act in Relation to Attorneys and Marshals," approved March 3d, 1852, in so far as it conflicts with the Organic Act of Congress, is null and void.

TERRITORIAL MARSHAL, HOW ELECTED.—Under Section 7 of the Organic Act of Utah, a Territorial Marshal must be nominated, and by and with the advice and consent of the Legislative Council, appointed by the Governor of the Territory ; and the Legislature, in Joint Assembly, has no power to elect such officer.

STATUTES, PART VALID, PART VOID.—A Statute may be valid in part, and void in part.

COMMISSION OF GOVERNOR—PRIMA FACIE EVIDENCE.—One holding a commission from the Governor, as Territorial Marshal, will be recognized as a *de facto* officer, over one holding a certificate of election merely, from the Joint Assembly of the Legislature.

(Original Proceedings in the Supreme Court.)

The Court being in adjourned session in the month of May, 1874, Duncan appeared in court, and by his counsel claimed to be recognized by the Court as Territorial Marshal for the Territory. McAllister also appeared by his counsel and claimed to be recognized as Territorial Marshal. The evidence presented, and the grounds relied upon by each, are stated and considered in the opinion of the Court.

*J. R. McBride* and *R. N Baskin* for Duncan.

*J. G. Sutherland* and *Z. Snow* for McAllister.

McKEAN, C. J., delivered the Opinion of the Court.

BOREMAN, J., concurred. EMERSON, J., dissented.

On the argument on behalf of the respective claimants, the Journal of the Legislative Assembly of Utah was introduced, showing that on the 14th day of Februrry, 1874, the Council was in session, and that among other proceedings, " communications were received from His Excellency, the Governor, nominating    *    *    *    *    Benjamin L. Duncan to the office of Territorial Marshal."

A commission, of which the following is a copy, was also introduced:

THE UNITED STATES OF AMERICA, ⎱
    TERRITORY OF UTAH.    ⎰

*"To all who shall see these Presents, Greeting:*

"Know ye, that whereas Benjamin L. Duncan was, on the third day of March, A. D. 1874, duly appointed Territorial Marshal in and for the Territory of Utah, and he having duly qualified as such, as appears by proper evidence on file in the office of the Secretary of the Territory: Therefore I, George L. Woods, Governor of said Territory, do hereby commission him Territorial Marshal, as above indicated, and authorize and empower him to discharge the duties of said office according to law, and to enjoy the rights and emoluments thereunto legally

appertaining, until the next session of the Legislative Assembly, and until his successor shall be elected and qualified to office.

[L. S.]　"In testimony whereof I have hereunto set my hand and caused the Great Seal of said Territory to be affixed.

"Done at Salt Lake City, this third day of March, A. D. 1874, and of the Independence of the United States, the ninety-eighth.

"GEO. L. WOODS,
Governor.

"George A. Black,
　Secretary of Utah Territory."

On the part of McAllister, the Journal of the Legislative Assembly was introduced, showing that on the 16th day of February, A. D. 1874, the Committee on Elections of the House of Representatives reported to the House "the number and kind of officers to be elected by the joint vote of the Legislative Assembly," among others, "One Territorial Marshal;" and added, "Your committee would also recommend that the Assembly hold a joint session as soon as possible, consistent with other legislative business, for the purpose of making said elections." Also showing that in the House of Representatives, on the 19th of the same month, Mr. S. A. Mann moved "that the Council be requested to meet the House in joint session to-morrow, at 2 p. m., for the purpose of electing the officers made elective by law by the joint vote of the Legislative Assembly. Seconded and carried." Also showing that in the Council on the same day, "A communication was received from the House, asking the Council to meet in joint session to-morrow, at 2 p. m. On motion of Councilor Harrington the Council agreed thereto." Also showing the following record :

"Joint Session. Representatives' Hall, Salt Lake City, February 20, 1874.

"According to previous agreement, the Assembly went into joint session.

"The President of the Council presiding.

"The roll of the Council was called by the Chief Clerk of the Council.   Quorum present.

"The roll of the House was called by the Chief Clerk of the House.   Quorum present.

"The President declared the joint session open and ready to proceed to business.      *      *      *      *      *

"On motion of Councilor Harrington, John D. T. McAllister was elected Territorial Marshal."

Documents, of which the following are copies, were read on the argument:

"REPRESENTATIVES' HALL,        }
SALT LAKE CITY, Feb. 21, 1874. }

"*Hon. J. D. T. McAllister:*

"DEAR SIR:—We have the honor to inform you that at a joint session of the Legislative Assembly, held at the Representatives' Hall, on the twentieth instant, you were elected Territorial Marshal for the Territory of Utah, for the term prescribed by law.

"Respectfully yours,
L. JOHN NUTTALL,
Chief Clerk of the Council.

"ROBT. L. CAMPBELL,
Chief Clerk of the House of Representatives."

"TERRITORIAL AUDITOR'S OFFICE,        }
SALT LAKE CITY, Feb. 26th, 1874. }

"I hereby certify that John D. T. McAllister, who was on the twentieth day of February, A. D. 1874, elected by the joint vote of the Legislative Assembly of the Territory of Utah to the office of Territorial Marshal for the Territory of Utah, hath this day presented his bonds, with security, and taken and subscribed the oath of office.   Which bond has been approved and filed in my office, as required by law.

[L. S.]          WILLIAM CLAYTON,
          Auditor of Public Accounts for U. T.

The contest between Duncan and McAllister for the Territorial Marshalship does not come before us on appeal, nor is it in the nature of a *quo warranto*. Each petitioner asks only to be recognized as the Marshal *de facto*, leaving the question as to who is Marshal *de jure* to be contested in another way. But the manner in which the question is presented to us, will compel us in some regards to consider the legal rights of the petitioners, though we intend now to decide only which of them shall be treated as the *de facto* officer of the court.

Has the Supreme Court of the United States decided the questions involved in this contest? If it has, then its decision must put a speedy end to this controversy.

The cases of Clinton *v.* Engelbrecht and Snow *v.* the United States *ex rel.* Hempstead, have been cited as controlling; and it must be conceded, on all hands, that if the questions now before us have been decided in that court, it was in one or the other, or in both of those cases. What were the questions involved in those cases? In Clinton *v.* Engelbrecht, the United States Marshal summoned the jury which tried the case—a case arising under the local laws of the Territory. The court decided that the jury should have been summoned by the Territorial Marshal, and not by the United States Marshal. In Snow *v.* the U. S., *ex rel.* Hempstead, the United States Attorney claimed that it was his right and duty, and not the right and duty of the Territorial Attorney General, to prosecute, in the Federal courts, all offenders against the local criminal laws of the Territory. The court decided that such offenders should be prosecuted by the Territorial Attorney General, and not by the United States Attorney.

Those questions being decided, are set at rest. But the Supreme Court of the United States would be the last court to claim that it could decide, in those cases, or in any case, a question not involved in the record. No court has more clearly than that court laid down the the doctrine, that an opinion expressed upon a question not before the court is neither binding upon inferior courts nor upon the court which expressed it.

The question, how must the Territorial Marshal of Utah be appointed, or elected, or chosen? has never been presented to the Supreme Court of the United States, and therefore that court has not had it in its power to decide it. It has never been decided, neither in that court nor in this. If either court has ever employed language which even remotely seems to decide this question, it has been in some case not involving the question, and therefore the language was clearly *obiter*.

The learned counsel for the respective petitioners referred to many text books and reported cases; but in some respects the case at bar is unlike any in the books. It is a case of new impression. Let us inquire, then, not in the light of authority, for there is none, but in the light of reason brought to bear upon the statute, how must the Territorial Marshal be appointed, or elec ed, or chosen?

The Organic Act of this Territory provides for the election, by the people, of the members of the Legislative Assembly; and that the Governor, Secretary, Chief Justice and Associate Justices, U. S. Attorney and U. S. Marshal, shall be nominated, and by and with the advice and consent of the Senate, appointed by the President of the United States. And section 7 of the Organic Act provides thus: "And be it further enacted: That all Township, District and County officers, not herein otherwise provided for, shall be appointed or elected, as the case may be, in such manner as shall be provided by the Governor and Legislative Assembly of the Territory." These provisions, it will be borne in mind, apply to Federal officers, members of the Legislative Assembly, and Township, District and County officers. It is most manifest that none of these provisions control the question under consideration. A Territorial Marshal is not a Federal officer; he is not a member of the Legislative Assembly; he is not a Township, District, or County officer. These provisions of the Organic Act throw no direct light upon the inquiry, how must the Territorial Marshal be appointed, elected or chosen?

But section 7 of that act contains this further provision: "The Governor shall nominate, by and with the advice and consent of the Legislative Council, appoint all officers not herein otherwise provided for."

Can there be any question that if there is anything in the Organic Act, authorizing the creation of and designating the manner of filling the office of Territorial Marshal, it is the provision last quoted. If such an officer can exist at all, must he not of necessity be created like "all officers not herein otherwise provided for?" The Supreme Court of the United States has recognized the right of the Governor and Legislative Assembly to create the office, but it has not decided how that office must be filled.

But what legislation has there been creating or touching this officer? When Brigham Young was Governor of this Territory, an act was passed and approved containing this provision, to-wit: "Be it enacted by the Governor and Legislative Assembly of the Territory of Utah: . That a Marshal shall be elected by a joint vote of both Houses of the Legislative Assembly, whose term of office shall be one year," (afterwards extended to four years), "unless removed by the Legislative Assembly, or until his successor is elected and qualified." (See sec. 1, chap ix., p. 38, Laws of Utah.)

It is thought by some whose opinions are entitled to a high respect, that the office sought to be created by this act, and the manner of filling it, are inseparable; that neither can stand without the other; that if the one is overthrown it must drag down the other with it. Let us consider this view of the case.

What must be presumed to have been the intention of the Legislative Assembly in enacting this law? Was it to accommodate and benefit the public? Or was it to create a place for the benefit of some favorite? We must judicially presume that the legislators intended to serve their constituents rather than some one man; that the office and not the officer was the thing considered. If the office and the incumbent are inseparable, then the

office did not exist till the incumbent was chosen, and were the incumbent to die the office would die with him. There would be no vacancy to fill for the reason that there would be no office; and there could be no Territorial Marshal until the office were created by legislation, and filled by proper designation. And what would be the consequences of such a state of affairs? The United States Marshal could not act in local cases, either civil or criminal; the rights of parties could not be enforced, and criminals could not be brought to justice. Unless we are irresistibly impelled to it, we ought not to reach a conclusion that might lead to such consequences.

It seems to have been the intention of the Legislative Assembly to do two things—

1. To create the office of Territorial Marshal.

2. To fill that office by a joint vote of both Houses.

The Supreme Court of the United States recognizes the right of the Assembly to create the office, and the Organic Act provides how it shall be filled. If any part of the Utah Statute conflicts with the Organic Act, of course the former must, in such part, be null and void. The doctrine that a statute may be valid in part and void in part, is elementary.

If the Territorial Marshal is a "township," "district," or "county" officer, then the manner of electing him provided by the Utah Statute may be valid. (Organic Act, sec. 7.) A constable chosen for a town, or precinct, or small political division or district, is a Township or District officer. An officer chosen or appointed for a limited division of a county, or of the Territory, such as a representative district, or council district, or judicial district, is a district officer. The Utah Statute provides—" Sec. 2. Said Marshal shall have power to appoint one or more Deputy Marshals in each judicial district of the Territory." A Sheriff is a County officer. The Territorial Marshal is not a Federal officer; he is therefore not to be nominated, and, by and with the advice and consent of the Senate, appointed by the President of the United States. The bailiwick of the Marshal is co-

extensive with the Territory; he is therefore not a Township, District or County officer, and therefore he cannot be appointed or elected in such manner as shall be provided by the Governor and Legislative Assembly, unless they shall provide the same manner that has been provided by Congress. The Territorial Marshal, not belonging to any one of the classes specifically named, must be included amongst " all officers not herein otherwise provided for;" and therefore he must be nominated, and by and with the advice and consent of the Legislative Council, appointed by the Governor. (Organic Act, Sec. 7.) The Utah statute, in so far as it conflicts with this provision of the Organic Act, is null and void. What may have been the motive of the Legislative Assembly in passing, or of Governor Young in approving, this provision; whether the Governor desired to be relieved of the responsibility of nominating the officer, or whether it was intended to take the power to nominate away from his successors in office, it is unnecessary to inquire. It is sufficient to say, that they could neither repeal nor override an important provision of the Organic Act.

Whether the joint session of the two Houses of the Legislative Assembly was called and conducted, and the election of McAllister effected, according to parliamentary law or not, is a matter of no moment. According to the Supreme Court of the United States, the Assembly had a right to create the office of Territorial Marshal; according to the Organic Act the Governor of the Territory had a right, nay, it was his duty, to nominate, and, by and with the advice and consent of the Legislative Council, to appoint the incumbent of that office. The Governor did so nominate Duncan; the Council did not reject the nominee; the Governor did not withdraw his name; and, after the adjournment of the Council, the Governor appointed him by issuing to him a commission. " The Governor shall commission all officers who shall be appointed to office under the laws of the said Territory, and shall take care that the laws be faithfully executed." (Organic Act, Sec. 2.)    12

Many questions are left for consideration when this controversy shall come before us in a proceeding on *quo warranto*, if such a case shall arise.

We intend now to go no further than to inquire and decide which of these petitioners has the better *prima facie* case, and which ought therefore to be recognized as the Territorial Marshal *de facto*.

It is the opinion of the court that Benjamin L. Duncan ought to be, and he is hereby recognized as *de facto* the Territorial Marshal of this Territory.

Emerson, Justice, dissented, but there seems to be no written opinion.