# CASES DETERMINED

BY THE

# SUPREME COURT OF NEW MEXICO,

## JANUARY TERM, 1881.

---

IN THE MATTER OF THE ATTORNEY-GENERAL OF NEW
MEXICO.

TERRITORY OF NEW MEXICO v. JOSEPH STOKES AND
WILLIAM MULLEN.

*January 13, 1881.*

CONSUITUTIONAL LAW.  (1) *Special act of congress not necessary to annul
  territorial statute.*
SAME.  (2) *What is the constitutional law of a territory.*
SAME.  (3) *What classes of official vacancies governor of territory can fill
  without consent of council.*
OFFICE OF ATTORNEY-GENERAL.  (4) *What is not a vacancy in, "from
  resignation."*
SAME.  (5) *Governor cannot fill without consent of council.*
SAME.  (6) *Incumbent does not "hold over" in case no successor named.*
SAME.  (7) *Nature of.*
SAME.  (8) *Vacancy in, power of court to appoint some one to perform
  duties.*
SAME.  (9) *Held vacant.*

1.   It is not true that because a territorial statute has never been directly
     abrogated by act of congress, it is, therefore, certainly valid. Action
     by congress in annulling territorial statutes is rare, and only takes
     place where they are not void of themselves, but simply improper or
     inexpedient without being illegal, *per se.*  The usual way of declar-
     ing a territorial statute which is inconsistent with the higher law of

congress inoperative, is through the courts, just as in states statutes would be adjudged unconstitutional.

2. In a territory the constitution and laws of the United States, and especially the organic act of the territory itself, stand exactly in the relation that a state constitution occupies in a state.

3. Congress having, in the law of 1872, relating to appointments by the governer (Rev. Stat., U. S., sec. 1858), distinctly designated two classes of vacancies which the governor can fill without the consent of the council, the maxim *"expressio unius est exclusio alterius,"* and the legal construction as well as the reasonable interpretation of this enactment is to exclude the governor from filling any other kind of a vacancy than these two, without the consent of the council, as fully as if he were expressly excluded in terms from so doing.

4. Where one incumbent of the office of attorney-general of New Mexico resigned, and the vacancy thus created was filled by the governor whose appointee held until the expiration of the term and then the office became vacant, owing to the failure of the territorial council to confirm the governor's nominee for the next term, *held*, that such vacancy was not a vacancy "from resignation," because founded originally on the resignation of an incumbent of the office.

5. The governor of the territory of New Mexico has no authority conferred upon him to make any appointment to the office of attorney-general without the concurrence of the council, after the organization of the territory, except to fill vacancies occurring during the recess of the legislative council, from resignation or death.

6. The incumbent of the office of attorney-general does not "hold over" in case his term expires and no person is appointed to succeed him.

7. The attorney-general of New Mexico is not a township, district, or county officer, but a territorial one. He is the legal adviser of the governor and all other territorial officers.

8. In case a vacancy in the office of attorney-general, the court has power, as occasion arises, to appoint some suitable person to represent the territory in the prosecution or defense of cases before it.

9. The office of attorney-general of New Mexico is vacant, the term of the late incumbent having expired by operation of law, and the governor having no power to fill vacancies, except those occasioned by death or resignation, without the concurrence of the council.

At the expiration of the legislative session of 1880 a controversy arose as to the office of attorney-general of the territory. Hon. Henry A. Waldo had been holding that office for nearly two years under an appointment made by the gov-

In the Matter of the Attorney-General.

ernor to fill a vacancy occurring while no legislature was in session. On February 14, 1880, Eugene A. Fiske, Esq., appeared in the district court in the first district claiming said office by virtue of a commission from Governor Wallace dated on that day, the legislative term having expired the evening before.

The following authorities and acts of Congress and of the Legislative Assembly of New Mexico were cited by Mr. Fiske: Organic Act N. M., Sept. 9, 1850 (9 U. S. Stats., p. 449); Rev. Stats. U. S., secs. 1858, 1841, 1850 and 1857; Const. of the U. S., art. 2, sec. 3; Pascal's Annotated Const. U. S., p. 182; Act Rel. to Jesuits, 20 U. S. Stats., p. 280; Pascal's Annotated Const. of U. S., p. 174, note 198; Rev. Stats. N. M., sec. 23, Act Feb. 28, 1862, pages 86, 88; secs. 4 and 5, art. 6, chap. 10, pages 82, 84; Session Laws N. M., Act Jan. 8, 1874, sec. 2, p. 16; Rev. Stats. N. M., Act 1854, pages 628, 744; *U. S. v. Kirkpatrick*, 9 Wheat., 734; *Id.*, 4 Sawyer, 593; *Cate v. Ross*, 2 Duval (Ky.), 244; *People v. Bain*, 6 Cal., 509; *Peppin v. State*, 2 Sneed, 45; 4 Op. Attorney-General U. S., p. 523; *Clinton v. Englebrecht*, 13 Wal., 446; *Miner's Bank v. Iowa*, 12 How., 8; 5 Op. Attorney-General, 525; *Beebe v. Robinson*, 52 Ala., 74.

The chief justice, before whom the matter was thus presented, invited expressions of opinion on the subject from members of the bar, as *amici curiæ*, and arguments were made by several counsel. The discussion was adjourned to February 23d, in order to have all views thoroughly heard, and on that day various arguments were made and authorities produced. On the succeeding day Chief Justice Prince delivered the following opinion, which is given entire, as it contains a synopsis of the arguments advanced on all sides of the question. Although this opinion was rendered in the district court, its importance and the thoroughness with which it discusses the subject seem to warrant its insertion here. Below will be found the opinion of the supreme court in relation to the same matter, delivered in the case of the *Territory of New Mexico v. Stokes and Mullen, infra*, p. 63.

PRINCE, Chief Justice : On the morning of February 14th, 1880, two gentlemen appeared in the district court then sitting in and for the county of Santa Fe, each claiming to be attorney-general of the territory and asking recognition as such. The one was Hon. Henry L. Waldo, who for a considerable time previous had filled the office of attorney-general, and the other was Eugene A. Fiske, Esq., who presented a certificate of appointment by the governor, dated on that day.

A formal motion, as attorney-general, was made by one, and objected to by the other on the ground that the former was not rightfully filling that office, in order that the matter might be brought before the court ; and thereafter both parties were heard at length on the subject, and by request a number of the counsellors of the court also stated their views, and produced authorities bearing on the question. The material facts, with regard to which there is no dispute, are briefly as follows :

Judge Waldo was appointed attorney-general in the year 1878, to fill a vacancy occasioned by the resignation of Col. Breeden, the previous incumbent ; said resignation and the appointment of Judge Waldo both being subsequent to the adjournment of the legislature of that year. No legislature convened in 1879. The Legislative Council of 1880 finally adjourned about midnight on February 13th, having failed to confirm the nomination for attorney-general sent to it by the governor. On the morning of Feb. 14th, the governor, alone, appointed Mr. Fiske as attorney-general.

Three views have been presented to the court, and enforced by argument.

1. That the governor, alone, had power to appoint Mr. Fiske to fill the vacancy created by the expiration of the term of Judge Waldo ; and that Mr. Fiske is now attorney-general.

2. That the governor has no power to appoint without the advice and consent of the council, except to fill vacancies resulting from death or resignation ; and consequently could

not appoint in this case, and that under the circumstances Judge Waldo, as last incumbent, "holds over" until an appointment is legally made.

3. That the governor has no power to appoint under the circumstances; but that Judge Waldo's term is absolutely limited by statute and has expired; that, consequently, a vacancy exists.

Let us examine, in the first place, the statutes which relate to the office of attorney-general.

The organic act, which established the territorial government, provides as follows:

"SEC. 8. All township, district and county officers not herein otherwise provided for, shall be appointed or elected, as the case may be, in such manner as shall be provided by the governor and legislative assembly. * * * The governor shall nominate, and by and with the advice and consent of the legislative council, appoint all officers not herein otherwise provided for; and in the first instance the governor alone may appoint all said officers, who shall hold their offices until the end of the first session of the legislative assembly."

This section is substantially re-enacted in the U. S. Rev. Statutes, being there made applicable to all territories, in section 1857. No such an officer as attorney-general is named or "otherwise provided for" in the organic act. He is not a township, district or county officer, but a territorial one. As such, therefore, he comes within the scope of the latter half of sec. 8 of the organic act (or Section 1857 of the Revised Statutes), and within that alone. It was suggested in the argument that he was a "district officer," but the view can hardly be seriously entertained. Under the act of 1859 (Compiled Laws, page 82) the great part of which is still in force, he was the public prosecutor throughout the whole territory, besides being the legal adviser of the governor and other territorial officers. Subsequently (1862 and 1863) district attor-

neys were provided for, to act in certain districts, but the general duties of the attorney-general as official adviser, etc., have never been disturbed.

The legislature, in conformity with the organic act, provided (see Compiled Laws, page 84, sec. 7) that he should be appointed by the governor by and with the advice and consent of the legislative council; and added that he shall hold his office for two years, and until his successor should be appointed and qualified.

(It is to be observed that the attorney-general mentioned on page 82 of the Compiled Laws, was an officer created by the Kearney Code, before the organic act, forming the territory, was passed, and not the present official of that name.)

It is plain, then, that under section 8, of the organic act, which is the fundamental law of the territory, this officer had to be nominated by the governor, and by and with the advice and consent of the legislative council, appointed. There is but one exception to the strictness of this law, and that is the case of a new territory, in which, *in the first instance*, the governor alone may appoint all said officers, who shall hold their offices until the end of the first session of the legislative assembly.

The statement of this one case in which the governor can act alone, emphasizes the requirement under other circumstances of the concurrence of the council.

In 1854, the legislature of New Mexico passed an act, which is reprinted in the " Compiled Laws," on page 627, which provides that "in all cases wherein the governor is or may be authorized by law to make appointments by and with the advice and consent of the council, he is hereby authorized to make such temporary appointments during the recess of the legislative assembly, to continue until the meeting of the same."

It has been discussed at much length, in the argument, whether this law was within the power of the legislature to

pass or not, it being held on the one side that it was not in contravention of any provision of the organic act, and on the other that the organic act having stated distinctly the way in which such appointments were to be made, and particularized one single exceptional case in which the governor could appoint without the council, that it was not competent for the territorial legislature to designate a different way, or to add another case in which the executive could act alone.

It seems, however, that this discussion becomes comparatively unimportant in view of the subsequent congressional action in 1872. Down to that time the only law as to appointments of such officers as attorney-general had been in the organic act; there was no congressional provision for the fililng of any vacancies during the legislative recess, and there was but the single exception previously referred to— that of the "first instance"—to the requirement that the council should concur in order to make a valid appointment.

On June 8, 1872, congress enacted the following law (now section 1858 of the Revised Statutes) giving power to the governors of territories to make appointments in certain cases :

"In any of the territories whenever a vacancy happens from resignation or death during the recess of the legislative council in any office which, under the organic act of any territory, is to be filled by appointment of the governor, by and with the advice and consent of the council, the governor shall fill such vacancy by granting a commission, which shall expire at the end of the next session of the legislative council."

It will be observed that the class of officials herein referred to is exactly that which includes the attorney-general of this territory.

Here then was an explicit expression of the supreme will with regard to the filling of vacancies; and if the appointment now in question had been made to fill a vacancy occur-

ring from death or resignation there could be no doubt of the power of the governor to make it, alone, without the necessity of concurrent action by the council.

But the vacancy in this instance, if there is one, has occurred by expiration of term.

It may be noted here that Judge Waldo was appointed as attorney-general under this very section, in 1878. And the language is very explicit, that such terms "shall expire at the end of the next session of the legislative council."

It seems certain, at all events, that no vacancy exists from either death or resignation. It is true that one counsel has taken the ground in argument that this is a vacancy "from resignation," because it is founded originally on the resignation of Col. Breeden; and he held that all vacancies that may occur until there is a regular appointment by the governor and council for a full term, will relate back to that event and be vacancies arising from it, and therefore vacancies "happening from resignation." But this I do not think is tenable. We may safely assume, then, that this is not one of the two classes of vacancies referred to in this section. If there is a vacancy it is because of the expiration of Judge Waldo's term under the provisions of this very law. The question then arises, whether, since the passage of this act of 1872, the governor, alone, can appoint to fill a vacancy occasioned by expiration of term.

The attention of congress was evidently called to this subject of filling vacancies by appointment by the governor alone, or the law of 1872 would not have been enacted. It gives that power distinctly in two cases, and no more. It stops there.

Now no maxim of law is of more general and uniform application than "*expressio unius est exclusio alterius*," "the expression of one thing excludes others." Broom in his "Legal Maxims," p. 664, says this maxim is "never more applicable than when applied to the interpretation of

a statute." On the same subject Sedgwick in his "Constitutional and Statutory Law," says, "If a new power·be given by an affirmative statute to a certain person, all other persons are in general excluded from the exercise of the power, since ' *expressio unius est exclusio alterius :* ' " See p. 30.

In Iowa the same idea is expressed in these words : " Where a statute limits a thing to be done in a particular form, it includes in itself a negative, viz. : that it shall not be done otherwise " (7 Clarke, 265) ; and in Connecticut it is held that " a statute that prescribes that a thing shall be done in a particular way, carries with it an implied prohibition against doing it in any other way :" 36 Conn., 373.

This general principle is so fundamental and well understood that it requires no argument to enforce it, the only question being whether it applies to the case in hand.

In the law of 1872 (Revised Statutes, sec. 1858,), congress, having the whole subject before it, distinctly designated two classes of vacancies which the governor can fill without the consent of the council. It seems clear that by designating these two, they have excluded all others. If not, why designate any classes of cases at all? Why not have said that " whenever a vacancy happens, the governor shall fill," etc.? But they carefully particularized two kinds of vacancies and two only.

It appears to me that the legal construction, as well as the reasonable interpretation is to exclude any other kind of a vacancy, as fully as if it were excluded in terms.

This is the only law of congress which gives to the governor authority in any case to act by himself in making such appointment, except at the first organization of each territory. If the power to fill the vacancy in question is not to be found here, it does not exist anywhere in congressional law. This law was passed long after the territorial statute of 1854, and if the latter even was valid, it is controlled and modified now by the expression of the superior power.

It has been argued in this case, that because the law of 1854 was never directly abrogated by act of congress, therefore it was certainly valid. But this does not at all follow.

In a territory the constitution and laws of the United States and especially the organic act of the territory itself, stands exactly in the relation a state constitution occupies in a state. All territorial enactments not consistent with them are null and void. This is stated in terms in 1 Utah Reports, p. 75 ; in 20 Wallace, 375, and other places, but we do not need any such exposition for the proposition is obvious from the language of the organic act, from sec. 1851 of the Revised Statutes, and self-evident from the very nature and constitution of a territory.

Action by congress in annulling territorial statutes is rare, and usually only takes place in cases where they are not void of themselves, but simply improper or inexpedient without being illegal *per se*. The usual way of declaring a territorial statute which is inconsistent with the higher law of congress, inoperative, is through the courts, just as in the states similar enactments would be adjudged to be unconstitutional.

It is not even presumptive, therefore, far less conclusive evidence, that the territorial law of 1854 was originally valid, or if so, has continued in force since the enactment by congress of sec. 1858 in 1872, because it has not been formally annulled by congress. Each law of congress annuls or modifies every territorial statute with which it conflicts, because it is superior, and overrules it ; and it is not necessary that it shall contain a special repealing clause.

In two territories there have been adjudicated cases with regard to territorial laws which provided for a different method of appointing officials from that fixed by the organic acts, and in both cases the supreme court of the territory has declared such laws to be void ; though in neither case had congress acted in annulling them. One of these cases was in

Utah, where the legislature had provided for a territorial officer known as a marshal, who came within the same class as our attorney-general under the organic act, and consequently should have been appointed by the governor and council. The Utah law provided for his election by a joint vote of the legislative assembly. The court decided that the part of the law creating the office was legal, but the portion fixing the method of his selection was void. They recited the language of the organic act as to such appointments and they say, " The Utah statute in so far as it conflicts with the province of the organic act is null and void." " They could neither appeal or override an important provision of the organic act : " 1 Utah, 89.

This decision is important as distinguishing between the legal and the illegal part of the territorial statutes ; and thereby answers the argument made with much force in this matter during the first day's hearing, that the legislature had created the office of attorney-general and therefore had equal power to regulate the method of filling it.

The case in Montana was analogous. The officer in question was the auditor, and the legislature had passed an act making him elective by the people. The court decided that this provision was in contravention of the organic act and of no force: 1 Montana, 250.

The last mentioned case has another phase, which makes it important in the discussion of the subject before us. The governor had appointed an auditor without the concurrence of the council. This was decided to be illegal. The language is so appropriate that I quote it *verbatim* :

" Being an office created by the legislature of the territory, the appointment to which comes under that clause of section 7, of the organic act, (Sec. 8, of New Mexico) of officers not therein otherwise provided for, and which the governor is empowered to nominate and by and with the advice and con-sent of the legislative council appoint, we are of the opinion

that the commission given by the governor to the plaintiff, purporting to appoint him to the office of territorial auditor without the advice and consent of the legislative council, does not confer the right to the possession and emoluments of the said office."

The arguments which have been made at a considerable length on this hearing as to the general power of the executive to appoint, under the clause which makes it his duty to "see that the laws are faithfully executed," or under the doctrine of *ex necessitate*, are, I think, shown not to be controlling, by the decision in this same Montana case, in which they are discussed fully.

It appears then, from a consideration of all the statutes and decisions affecting the matter, that the governor has no authority conferred upon him to make any appointment to the office of attorney-general, without the concurrence of the council, after the first organization of a territory, except to fill vacancies occurring during the recess of the legislative council, from resignation or death ; and the present circumstances not falling within that limitation, that he had no power to make the appointment of Mr. Fiske on February 14.

This brings us to the second question, viz.: If the governor has no power to appoint, under the circumstances, does Judge Waldo, the late incumbent, "hold over?"

In favor of this proposition, language of the Compiled Laws, page 84, sec. 7, is quoted :

" The governor by and with the advice and consent of the legislative council shall appoint an attorney-general who *
*   *   shall hold his office for two years, and until his successor shall be appointed and qualified."

And also a section on page 514, as follows : " All officers appointed or otherwise, shall continue in office and in the discharge of their duties until others are appointed or elected

and qualified according to law," as well as certain California decisions.

The first section cited, however, does not seem to apply to an official appointed by the governor to fill a vacancy; and the latter, which was adopted in 1851, was shown to have reference in all probability only to persons then in office and to the peculiar circumstances of that time.

In opposition to the California decisions, others from the same state, together with some from different sources, and the opinions of distinguished annotators on the constitution, were produced.

But the plain language of section 1858, under which Judge Waldo was appointed, really seems to leave little to conjecture in the matter.

It says distinctly that the commission in such cases "shall expire at the end of the next session of the legislature;" and the reason of this in case of appointments made under such circumstances, seems plain. The appointee was never confirmed by the council, and the obvious intention is that he shall not continue in office, longer than the exigency occasioned by the vacancy requires, without their concurrence.

The language is so distinct that it cannot well be misunderstood or explained away, and I think makes it clear that the term of Judge Waldo expired with the end of the session of the legislative council, on the night of February 13th last.

This leads to the conclusion that a vacancy exists in the office, which, under existing laws, can only be filled by the nomination by the governor and confirmation by the council; and it is urged that no council session is soon to be held, and that the existence of such a vacancy is most unfortunate. As to this there can be little question, but it is not a matter with which the court has to do, or which it can remedy. In this connection I quote the language of the opinion in the Montana case previously referred to. "In reply to the queries of counsel, that if the governor has not the power of

appointment to fill vacancies during the recess of the legislature, who has? We would say * * that it is not the province of the court to legislate for a contingency."

It is certainly very desirable that some provision should be made for the filling of such vacancies, and this, of course, can only be done by congress. In the act of 1872 they either supposed that they had covered every possible case that could occur, when they designated the two kinds of vacancies that might be filled, or else they intentionally withheld the power in other instances. In either view, it seems right that their attention should be called to the inconvenience arising from the inability to fill such a vacancy as that now before us, under existing laws.

It is true that the court has power to appoint some suitable person, as occasion arises, to represent the territory in the prosecution or defense of cases before it; and this it will endeavor to do in each instance until a lawful attorney-general appears, in such a manner as best to subserve the public interests in the locality where the emergency may arise; but this covers but a part of the duties of an attorney-general, and was never intended to be more than a temporary expedient.

It is earnestly to be hoped that congress will take some action to meet such cases before the summer term of our courts.

The decision of the court is that the office of attorney-general of New Mexico is vacant, the term of the late incumbent having expired by operation of law, and the governor having no power to fill vacancies, except those occasioned by death or resignation, without the concurrence of the council.