UTAH SAVINGS & TRUST COMPANY, a Corporation, as Administrator of the Estate of JOHN TAS-ANEN, Deceased, Respondent, v. DIAMOND COAL & COKE COMPANY, a Corporation, Appellant.

No. 1407. (73 Pac. 524.)

1. **Death: Right of Action: Statutes of Wyoming: Constitutional Law: Validity.**

Revised Statutes Wyoming 1887, section 2364a (Rev. St. 1899, sec. 3448), authorizes the maintenance of an action for death by wrongful act, and the succeeding section limits the recovery to such damages as the jury shall deem fair and just, not exceeding $5,000. Constitution, Wyoming, 1890, article 9, section 4, provides that whenever the death of a person shall be caused by wrongful act, such that if death had not ensued the party injured could have maintained an action for damages in respect thereof, the person who would have been liable if death had not ensued shall be liable notwithstanding the death of the person injured, and requires the Legislature to provide by law for the manner in which such section shall be enforced. Article 10, section 4, prohibits the enactment of a law limiting the amount of damages to be recovered in an action for a

wrongful death, and article 21, section 3, continues all laws in force in the Territory of Wyoming not repugnant to the Constitution. *Held*, that, though that part of the previous act limiting the recovery in actions for wrongful death to $5,000 was unconstitutional, such fact did not preclude the continuance of the remainder of such act, in so far as it gave an action for wrongful death, under Constitution, article 21, section 3.[1]

2.  **Same: Nature of Action: Enforcement: Suit in Different State: Transitory.**

    The right of action for wrongful death provided by Revised Statutes Wyoming 1887, section 2364a, and the following section, is not limited in its enforcement to a trustee for the persons entitled to damages recovered therein, appointed in that state, but the right of action is transitory in its nature, and may be maintained in the courts of another State having jurisdiction of such matters, and having acquired jurisdiction of the parties.[2]

3.  **Same: Damages: Nonsuit.**

    Where, in an action for wrongful death, the evidence established that at the time of his death deceased was a strong, healthy man, forty-two years of age, and that his son, for whose benefit the suit was brought, who was twenty years of age, was living with him, a nonsuit on the ground that no damages had been proved was properly denied.

4.  **Same: Negligence: Verdict: Evidence: Sufficiency.**

    In an action for the death of a coal miner from suffocation caused by a fire in the mine, evidence of defendant's negligence in permitting combustible materials to remain in the mine, which were subject to be ignited from the miners' open lamps, *held* sufficient to justify a verdict in favor of plaintiff.

5.  **Same: Contributory Negligence: Evidence: Insufficiency.**

    In an action for the death of a coal miner from suffocation caused by a fire in the mine, evidence examined and *held* not to show contributory negligence on the part of the deceased.

### (Decided August 12, 1903.)

Appeal from the Second District Court, Weber County. —*Hon. H. H. Rolapp*, Judge.

---

[1] State v. Beddo, 22 Utah 432, 63 Pac. 96; Ritchie v. Richards, 14 Utah 345, 47 Pac. 670; Eureka v. Wilson, 15 Utah 53, 48 Pac. 150, 62 Am. St. Rep, 904; Ex parte Duncan, 1 Utah 81.

[2] White v. Railway Co., 25 Utah 346, 71 Pac. 593.

Action to recover damages for the death of plaintiff's intestate alleged to have been caused by the negligence of the defendant. From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED.

Messrs. *Richards & Ferry* and *A. J. Shores, Esq.,* for appellant.

There is certainly a repugnancy between the constitutional provision stating that there shall be no limit of liability and the act of the Legislature restricting the recovery to five thousand dollars. In making this statement we are not unmindful of the general rule adopted by the courts that in determining the question of the constitutionality of the statute and its several parts, those portions of the statute which are unconstitutional will be discarded and the constitutional parts will be enforced in cases where they are so separable and independent that the courts can say that the Legislature would have enacted the constitutional part even though the unconstitutional part might fall. But when the parts of the statute are so mutually dependent and connected as conditions, considerations, inducements or compensations for each other as to warrant a belief that the Legislature intended them as a whole, and that if all could not be carried into effect the Legislature would not pass the residue independently, then if some parts were unconstitutional all of the parts which are thus dependent, conditional or connected, must fall with them. Campau v. Detroit, 14 Mich. 276; State v. Dousman, 28 Wis. 541; Slauson v. Racine, 13 Wis. 398; Brooks v. Hydorn, 76 Mich. 273, 42 N. W. 1122; Ex parte Jones, 49 Ark. 110, 4 S. W. 639; Wadsworth v. Union Pacific Ry. Co., 33 Pac. 515.

Did the Legislature of the State of Wyoming intend that an action for damages should lie in such cases, irrespective of the amount of the recovery? The lan-

guage of the section is: ''In every such case the jury shall give such damage as they deem just and fair, not exceeding five thousand dollars.'' The very language precludes the idea of any purpose upon the part of the Legislature of the State of Wyoming to provide an action in such cases irrespective of the amount of the recovery.

*Charles C. Dey, Esq., W. L. Maginnis, Esq.,* and *W. H. Bramel, Esq.,* for respondent.

### STATEMENT OF FACTS.

This action is brought by the legal representative of John Tasanen, who was killed while he was in the employ of and at work for defendant company in its mine at Diamondville, State of Wyoming. The complaint charges negligence on the part of the company in suffering and permitting straw, wood, waste, and oil to be placed and stored in direct contact with its bodies of coal, and permitting its employees to use at and about such combustible materials, lamps with open flames, and by reason thereof, a fire was started which caused the death of the deceased. The defendant denied the allegations in the complaint charging negligence, and, as a further defense, alleged contributory negligence on the part of the deceased, and that he assumed the risks and hazards of the employment, and that the negligence, 'if any, that resulted in his death, was that of a fellow-servant. It appears from the record that the deceased came to the State of Wyoming from Finland, his native country, December 15, 1900, and went to work for and continued in the employ of the defendant company until his death, which occurred February 25, 1901. At the time of his death he had a wife and three minor children residing in Finland, and who were dependent upon him for support, and also a minor son, Franz Tasanen, twenty years of age, who resided with him at Diamondville. The trial court held that the members of his fam-

ily who were in Finland, and who were alien non-residents, could not be considered in the trial of the case, and that the only damages that could be proved were those sustained by Franz Tasanen. We do not agree with the trial court in its conclusions on this point, but, as the plaintiff did not appeal, we are precluded from reviewing the question raised by this ruling. The mine in which the deceased was at work at the time of his death is entered and worked through a "slope" which follows the dip of the coal, at an incline of about thirteen degrees, and extends from the surface into the mine about 2,000 feet. At intervals along this slope, and on the south thereof, levels or entries are run out at right angles to the slope. Each level has a main and back entry, which are about thirty feet apart. The sixth south entry, the level in which deceased was at work at the time of the fire which caused his death, is in about 1,200 feet from the mouth of the slope or main entry to the mine, and the next or seventh south entry or level is further in on the slope, and runs parallel with the sixth south entry. These two entries extend south from the slope a distance of 5,000 feet, and are connected by crosscuts at points 1,400, 2,600 and 4,200 feet, respectively, from the slope. On the upper side of each level are excavations called "rooms," in which the miners work extracting the coal. These rooms are about ten feet high and twenty feet wide, and are numbered consecutively, commencing with room No. 1, which is nearest the slope. The coal is taken from the levels in cars drawn by horses. At the time of the catastrophe in which deceased was killed, there were four drivers working in the sixth south entry. At a point on this level, opposite room No. 45, and about 2,900 feet from the slope, there had been a crosscut from the main to the back entry, and at a point about ten feet from its entrance this crosscut was closed by a partition of pine boards, and over the entrance a canvas covering was drawn and fastened, which served as a door; making a room or "shack" about twenty feet in length by ten

in width.   This room or shack was used by the drivers
to while away their time while waiting for their cars.
A lot of smashed-up coal, pieces of board, rope, and
pieces of canvas were permitted to accumulate in this
shack while it was occupied by the drivers, as above
stated.   There was also an old wooden box in it, which
contained cans of oil, from which the drivers filled their
lamps, the flame of which lamps was open and unpro-
tected.   Just outside of this shack stood an old barrel.
There had been several fires started and extinguished
at this place before the one under consideration took
place.   The company had a man employed, "whose duty
it was to look out for fires in the mine."   On February
25, 1901, the deceased was working at the face of room
56, which extends back 300 feet from the main entry of
the sixth level.   This room is about 900 feet towards
the face or end of the sixth entry from where the shack
stood, and about thirty-eight feet from the slope; the
shack being between room 56 and the slope.   About 4
o'clock of the afternoon of the day in question a driver
by the name of Boehn was coming from towards the
south end of the sixth level with cars of coal, when he
observed that the mine was on fire, as smoke was com-
ing from the direction of the shack.   He met another
driver, by the name of Mahan, who said to him, "I won-
der if this is the shack on fire."   Another driver, who
was apprised of the fire, went to the entries of the sev-
eral rooms on this level where men were at work, and
called to them that the mine was on fire, and for them
to go to room 59, and from there into the seventh level,
and from there to the slope and out of the mine; this
being the only way by which the miners who were work-
ing in the sixth entry could escape.   He went to room
56 and called to the deceased and his son to "come out
to room 59 and out the seventh"; and, proceeding, he
says: "The men in 56 were at the top.   I could see
their lights on their heads.   I don't know what they
said.   They couldn't talk very well.   They said some-
thing.   I spoke in English.   They stood and listened

to what I said.'' The drivers were the only men who escaped. The others were smothered or strangled by smoke and gases created by the fire. The case was tried by a jury, who returned a verdict in favor of the plaintiff in the sum of $750. Defendant appeals.

McCARTY, J., after stating the foregoing facts, delivered the opinion of the court.

Appellant's first contention is that there is no statute in the State of Wyoming creating a cause of action for death by wrongful act. Section 2364a, Revised Statutes Wyoming 1887, (section 3448, Rev. St. Wyo., 1899), provides: ''Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof; then, in every such case, the person who, or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter.'' Section 3449 of the same act provides that '' every such action shall be brought by and in the name of the personal representative of such deceased person; and the amount recovered in every such action shall be distributed to the parties and in the proportions provided by law, in relation to the distribution of personal estates left by persons dying intestate, In every such case the jury shall give such damages as they shall deem fair and just not exceeding five thousand dollars, and the amount so recovered shall not be subject to any debts or liabilities of the deceased: provided that every such action shall be commenced within two years after the death of such deceased person.'' The Constitution of the State of Wyoming went into force and effect January

26 Utah 20

1, 1890, and section 4, article 9, of that instrument pro-
vides: ''For any injury to person or property caused
by wilful failure to comply with the provisions of this
article, or laws passed in pursuance hereof, a right of
action shall accrue to the party injured, for the damage
sustained thereby, and in all cases in this State, when-
ever the death of a person shall be caused by wrongful
act, neglect or default, such as would, if death had not
ensued, have entitled the party injured to maintain an
action to recover damages in respect thereof, the person
who, or the corporation which would have been liable,
if death had not ensued, shall be liable to an action for
damages notwithstanding the death of the person in-
jured, and the Legislature shall provide by law at its
first session for the manner in which the right of action
in respect thereto shall be enforced.'' Section 4, arti-
cle 10, is as follows: ''No law shall be enacted limiting
the amount of damages to be recovered for causing the
injury or death of any person. Any contract or agree-
ment with an employee waiving any right to recover
damages for causing the death or injury of any em-
ployee shall be void.'' Section 3, article 21, is as fol-
lows: ''All laws now in force in the Territory of Wyo-
ming, which are not repugnant to this Constitution, shall
remain in force until they expire by their own limita-
tion, or be altered or repealed by the Legislature.''

Appellant insists that section 3449 is in conflict with
the provisions of the Constitution, because it attempts
to limit the amount of damages in this class of cases to
$5,000, and therefore was not continued in force by sec-
tion 3, article 21, of the Constitution. It is elementary
that where a part of a statute is in conflict with the Con-
stitution, but the remainder is in harmony with it, if it
can be done the parts will be separated—and that which
is constitutional will be upheld. Black, Int. Law, p. 96,
thus states the rule: ''It frequently happens that some
parts, features, or provisions of a statute are invalid
by reason of repugnancy to the Constitution, while the
remainder of the act is not open to the same objections.

In such cases it is the duty of the courts not to pronounce the whole statute unconstitutional, but, rejecting the invalid portions, to give effect and operation to the valid portions." Judge Cooley, in his work on Const. Lim. (6 Ed.), p. 211, in part says: "If when the unconstitutional part is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which is rejected, it must be sustained." This doctrine has been repeatedly declared and followed by this court. State v. Beddo, 22 Utah 432, 63 Pac. 96; Ritchie v. Richards, 14 Utah 345, 47 Pac. 670; Eureka v. Wilson, 15 Utah 53, 48 Pac. 150, 62 Am. St. Rep. 904; Ex parte Duncan, 1 Utah 81. That portion of the Wyoming statute limiting the amount of recovery in this class of cases to $5,000, while it is repugnant to the provisions of the Constitution of that State, is susceptible of being separated from the remainder of the act, which is not open to the same objection; and when so severed the part of the act not in conflict with the Constitution is complete in itself, and capable of being enforced in conformity with the general purpose of the act. Dunn v. City of Great Falls, 13 Mont. 58, 31 Pac. 1017.

The next contention of appellant is that the trust created by the statute of Wyoming can only be enforced by a trustee appointed in that jurisdiction. While there are a few decisions to the contrary, the great weight of authority holds that a legal liability once created, either by the rules of the common law or by statute, can be enforced, and a right of action maintained, in any court having jurisdiction of such matters, provided jurisdiction of the parties can be obtained, and the action itself is not opposed to good morals or the policy of the State where it is brought. In the case of White v. Railroad Co., 25 Utah 346, 355, 71 Pac. 593, Mr. Chief Justice BASKIN, in discussing this question, says: "While there is some conflict of decisions on the subject, it is generally held that a right given by the statutes of

one State will be recognized and enforced in the courts of another State.'' Dennick v. Ry. Co., 103 U. S. 11, 26 L. Ed. 439; Stewart v. Ry. Co., 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537; Higgins v. Ry. Co., 155 Mass. 176, 29 N. E. 534, 31 Am. St. Rep. 544; Railway Co. v. Crudup, 63 Miss. 291.

At the close of the testimony for respondent, appellant moved the court for a nonsuit on the ground that no damages had been proved, and the action of the court overruling the motion is now alleged as error.

The record shows that deceased at the time of his death was a stout, healthy man, forty-two years of age, and that his son, who was twenty years of age, was living with him. Under these circumstances, the question of damages was one for the jury to determine; and the trial court having properly submitted this question to it, under the Constitution and a long list of decisions of this court on this question, we are powerless to interfere, even though we might differ with the jury as to what would, under the facts disclosed, be a fair and just verdict.

Counsel contend that the evidence fails to show negligence on the part of the appellant, and therefore the case should have been taken from the jury. There is evidence to support a finding by the jury that the company knew, or by the use of ordinary diligence could have known, of the condition in which the shack was kept where drivers stopped while waiting for cars. And there is also evidence which tends to show that the fire started in the vicinity of this shack. Charles Mahan, a witness for defendant, testified, in part, as follows: ''When I detected the smoke I thought I could smell cloth and pine boards. I might have said the shack was on fire. I think I did. It was the only thing along the car course on the outside I could imagine could possibly burn.'' Under all the circumstances it was purely a question of fact for the jury to determine as to whether the condition in which the shack was kept constituted negligence on the part of the appellant, and

whether the fire that caused the death of decedent was the result of such negligence. These issues were fairly submitted to the jury, and, the jury having found against the appellant, the findings cannot be disturbed, as there is evidence to support them.

The contention that the evidence shows contributory negligence on the part of the deceased is entirely unsupported by the evidence. There is not a word of testimony that tends to show that the deceased knew, or that it was his place to know, what the conditions were in and around the shack; and he had a right to assume that the company would do its duty, and exercise ordinary care and caution to prevent fires and other casualties in the mine where he was at work. Of all the men who were at work in the sixth south entry, mining coal, at the time the fire started, not one escaped. When the body of deceased was found, it was between the room where he was at work when notified of the fire and the shack, where the preponderance of the evidence shows the fire must have started, which tends to show that he did not understand the driver when he called to him "to come to room 59 and through the seventh level and out." One of the miners, to whom the most explicit instructions were given respecting the avenues of escape, was unable to get to a place of safety, and was killed by the smoke and gases caused by the fire.

We find no reversible error in the record. The judgment is affirmed, with costs.

BASKIN, C. J., and BARTCH, J., concur.