MAYS, ET UX, VS FRIEBERG, KLEIN & CO.

Opinion delivered January 13, 1899.

*1. Appeal—Dismissal—Extension of Time..*

Under Mansf. Dig. Sec. 1271, the court is authorized to extend the time for filing the record in the appellate court, on appeal, although the statutory period of 90 days has already expired and motion has been made to dismiss the appeal because of such failure.

*2. Improvements on Indian Lands—Sale of—Homestead not Subject to Sale.*

Under Sec. 31, of Act of Cong. of May 2, 1890 (26 Stat. 95) which provides for the sale of improvements on real estate in the Indian Territory, owned by an adopted citizen of an Indian tribe or a person not a citizen thereof, after the return of nulla bona upon an execution sued out upon a judgment against such person, it is error for a court to order the sale of certain improvements on real estate of the judgment debtor, without an inquiry having been made as to whether or not such improvements constituted the debtor's homestead.

*3. Improvements on Indian Lands—Sale of—Only Indian Citizens May Purchase.*

And under such statute, which also provides that if any such improvements are sold, under such proceedings, only citizens of the tribe in which said property is situated may become purchasers thereof, it is error for the court to decree the sale of such improvements without limiting the right of purchase to citizens of the tribe within whose territory the said improvements are situated.

Appeal from the United States court of appeals for the Southern district.

C. B KILGORE, Judge.

Action by Frieberg, Klein & Co. against J. A. Mays and wife. Judgment for plaintiffs. Defendants appeal. Reversed.

January 8, 1894, the appellees, Frieberg, Klein & Co. (hereinafter called "plaintiffs"), filed in the United States court in the Indian Territory, Southern division, at Ardmore, against J. A. Mays and other persons, a complaint or bill of discovery, wherein it is alleged, among other things, that on the 27th day of November, 1892, they recovered a judgment in the United States court at Ardmore, in the Indian Territory, in this cause against the defendant J. A. Mays for the sum of $1,319 and costs, with interest at the rate of 8 per cent. per annum from the date of said judgment; that said judgment has never been paid in any manner, or satisfied or discharged; that on December 30, 1893, the clerk of the court issued an execution upon said judgment; that January 6, 1894, said execution was returned endorsed, in substance, "No property found;" that the said defendant J. A. Mays is the owner of a large amount of property, which he has conveyed, or otherwise disposed of, with the fraudulent intent to hinder and delay his creditors; that among other property belonging to said defendant is the following, to wit, a certain business house on the south side of Main street in the town of Ardmore, Indian Territory, 25 feet front on said Main street, by 200 feet deep, same being lot No. 17 in block 2, according to the J. A. Mays Fire Map of the Town of Ardmore; that said house and lot are of the value of $2,000, and of the rental value of $50 per month, and are now in the possession of tenants of J. A. Mays or his wife, Sallie Mays; that J. A. Mays on January 28, 1893, was wholly and notoriously insolvent, and was indebted to the plaintiffs and many other persons far beyond his ability to pay, and that on or about said day and date, with the faudulent intent to hinder and delay his creditors, said defendant J. A. Mays executed to the defendant Sallie Mays,

whose name was then Sallie Chandler, a conveyance where-
by he pretended to sell said house and lot to her, the said
Sallie Mays, in consideration of one dollar and the love and
affection which he had and bore unto her; that said J. A.
Mays and Sallie Mays secreted said conveyance until after
judgment was obtained against said J. A. Mays in said suit,
and did not file the same for record in the office of the clerk
of this court until the 21st day of December, 1893, just six
days before the expiration of the time within which the
court stayed execution on said judgment, in order that the
said defendant J. A. Mays might prepare the record in said
cause to have the judgment reviewed in the circuit court of
appeals for the Eighth circuit; that said conveyance to said
Sallie Mays is wholly void as against these plaintiffs, and
was executed by said J. A. Mays, and was accepted by said
Sallie Mays, if she ever accepted it at all, in order to hinder,
delay, and defraud the creditors of said J. A. Mays. Plain-
tiffs conclude their petition by praying, among other things,
that the conveyance executed by J. A. Mays to Sallie Mays
be declared void and of no effect, and that the plaintiffs' said
lien be foreclosed on said house and lot; that the court ap-
point some good and prudent man as receiver, to take
charge and possession of all the property, effects, evidences
of debt, and securities above described and referred to, be-
longing to said J. A. Mays, and that the same be applied,
under such orders as this court may deem best, to the pay-
ment of plaintiffs' judgment herein; and that such receiver
take charge of said houses and lots, parcels of land, and im-
provements on real estate in the Chickasaw Nation, belong-
ing to said defendants, and collect all rents and revenues
arising from the same, and hold the same subject to the
orders of the court. To this bill of discovery J. A and
Sallie Mays filed their answer, but, as such answer has been
mislaid or lost, it does not appear in the record. The cause,
by agreement of parties, was referred to A. Eddleman, Esq.,

master in chancery for the trial court. The master in chancery, after hearing the pleadings, evidence, and argument of counsel, filed in the United States court his conclusion of fact and law. November 17, 1894, defendants, J. A. Mays and Sallie Mays filed exceptions to the report of said master in chancery. March 22, 1895, the exceptions to said master's report came on to be heard, and the court, after hearing same, overruled said exceptions, and in all things confirmed the master's report, and especially decreed, among other things, that the conveyance from J. A. to Sallie Mays, January 28, 1893, to be set aside, annulled, and held for naught, and that the first lot or parcel of land herein described (the business lot on Main street) be sold to satisfy plaintiffs' said judgment against defendant J. A. Mays, and all costs incurred in the action, both at law and in the equity proceedings herein; appointing A. Eddleman, Esq., receiver and special master commissioner, to take charge and possession of said lot No. 17 in block No. 2, and collect all rents that may become due thereon, until said property is sold; and the said Eddleman was directed to sell said property at public outery, after advertising the same for at lea t 15 days, and out of the proceeds of said sale said Eddleman was directed to pay first all costs of this suit and of the action at law in favor of plaintiffs, and then to pay off and discharge said judgment, and to return the surplus, if any, to the said J. A. Mays, and directing the said Eddleman to execute to the purchaser a good and sufficient deed of conveyance. To this judgment the defendants J. A. and Sallie Mays duly excepted, and said defendants were allowed an appeal to this court.

*C. L. Herbert* and *Yancey Lewis*, for appellants. *Ledbetter & Bledsoe*, for appellees.

SPRINGER, C. J. In this case appellees move the court to dismiss the appeal on the ground that the record

was not filed in the clerk's office within 90 days after the appeal was granted, as required by section 1271 of Mansfield's digest. That section is as follows: "It shall be the duty of the appellant to file in the clerk's office of the supreme court, within 90 days after the appeal or writ of error is granted, an authenticated copy of the record, otherwise his appeal or writ of error shall be dismissed; but the supreme court may for cause shown extend the time for filing such copy." The concluding sentence authorizes this court, for cause shown to extend the time for filing the record. Appellants file a counter motion for leave to file the transcript of the record, although the 90-days time prescribed by the statute has expired. This motion sets forth the facts upon which appellants rely in support of their motion. It is not necessary to set forth in this opinion the grounds relied upon. This court is of the opinion that appellants are not at fault; that they used reasonable diligence to have the record filed within the 90 days; and therefore their motion to extend the time so as to permit the record to be filed is allowed. The case will be determined on its merits.

It is not necessary to pass upon the question as to whether the trial court erred in holding the conveyance from J. A. Mays to his wife void. In view of the opinion of this court upon the other branch of the case, that question is immaterial.

This case turns upon the construction which should be given to the latter part of section 31 of the act of congress approved May 2, 1890. See 26 Stat. 95, and Rich. Dig. pp. 123, 124. The provision in question is as follows: "That no attachment shall issue against improvements on real estate while the title to the land is vested in any Indian nation, except where such improvements have been made by persons, companies or corporations operating coal or other mines, railroads or other industries, under the lease or per-

mission of law of an Indian national council, or charter, or law of the United States." "That executions upon judgments obtained in any other than Indian courts shall not be valid for the sale or conveyance of title to improvements made upon lands owned by an Indian nation, except in cases wherein attachments are provided for." "Upon a return of nulla bona, upon an execution upon any judgment against an adopted citizen of any Indian tribe, or against any person residing in the Indian country and not a citizen thereof, if the judgment debtor shall be the owner of any improvements upon real estate within the Indian Territory in excess of one hundred and sixty acres occupied as a homestead, such improvements may be subjected to the payment of such judgment by a decree of the court in which such judgment was rendered. Proceedings to subject such property to the payment of judgments may be by petition, of which the judgment debtor shall have notice as in the original suit. If on the hearing the court shall be satisfied, from evidence, that the judgment debtor is the owner of improvements on real estate, subject to the payment of such judgment, the court may order the same sold, and the proceeds, or so much thereof as may be necessary to satisfy said judgment and costs, applied to the payment of said judgment; or if the improvement is of sufficient rental value to discharge the judgment within a reasonable time, the court may appoint a receiver, who shall take charge of such property and apply the rental receipts thereof to the payment of such judgment, under such regulations as the court may prescribe. If, under such proceedings, any improvement is sold, only citizens of the tribe in which said property is situated may become the purchasers thereof."

This court has not heretofore been called upon to construe this provision. Attention is first called to the second sentence, which is as follows: "That executions upon judgments obtained in any other than Indian courts shall not be

valid for the sale or conveyance of title to improvements made upon lands owned by any Indian nation, except in cases wherein attachments are provided for.'' This provision is plain and free from ambiguity of any kind. It is a statute of exemption, and it excepts "improvements made upon lands owned by any Indian nation" from sale on execution upon judgments obtained in any other than Indian courts. There are two express exceptions set forth in this statute: First. In cases wherein attachments are provided for; and in such cases no attachment shall issue against improvements on real estate, except where such improvements have been made by persons operating coal or other mines, railroads or other industries, under lease or permission of law of an Indian national council, or charter or law of the United States. Second. In case of return of nulla bona upon an execution issued upon any judgment against an adopted citizen of any Indian tribe, or against any person residing in the Indian country, and not a citizen thereof. In such case, if the judgment debtor shall be the owner of any improvements upon real estate within the Indian. Territory, in excess of 160 acres occupied as a homestead, such improvements may be subjected to the payment of such judgment, by decree of the court in which such judgment was rendered. The proceedings which must be taken in order to subject such improvements to the payment of such judgments are clearly pointed out, and must be strictly observed. The proceedings required are: First. There must have been a judgment, an execution issued thereon, and a return of nulla bona; and the judgment debtor must be either an adopted citizen of an Indian tribe or a person residing in the Indian country, but not a citizen of the tribe. Second. A petiton must be filed in the United States court, of which the judgment debtor shall have notice as in the original suit. Third. On the hearing if the court is satisfied from the evidence that the judgment debtor is the own-

er of any improvements upon real estate within the Indian Territory, in excess of 160 acres occupied as a homestead, such improvements may be subjected to the payment of such judgment. The court may either order the improvements sold, or appoint a receiver to take charge of the property and apply the rental receipts to the payment of the original judgment, under such regulations as the court may prescribe. If the improvements are sold, only citizens of the tribe in which the property is situated may become the purchasers thereof. The provisions and conditions of this statute are jurisdictional. It must affirmatively appear in the proceedings of the court that all these conditions have been complied with, otherwise the judgment of the court will be void. The improvements upon tribal lands owned by citizens of the tribe by blood are wholly exempt from sale on execution. The persons subject to the provisions of this statute are adopted citizens, and persons residing in the Indian Territory, but not citizens of the nation in which the land is situated. The petition filed in the case at bar, and the proceedings of the court to subject the improvements in question to sale to satisfy appellees' judgment, do not comply with the requirements of the statute. Where authority is given to do a particular thing, and the mode of doing it is prescribed, such authority is limited to be done in that mode. All other modes are excluded. Suth. St. Const. § 326. Such affirmative legislation implies a negative of all other methods. Smith vs Stevens, 10 Wall. 321; City of New Haven vs Whitney, 36 Conn. 373; District Tp. of Dubuque vs City of Dubuque, 7 Iowa, 262; Childs vs Smith, 55 Barb. 45; Rogers vs Kennard, 54 Tex. 30. In the statute in question we have first a positive and unequivocal declaration that executions upon judgments obtained in the United States court shall not be valid for the sale or conveyance of title to improvements made upon lands owned by any Indian nation. If this were all of the statute, the meaning could

not be mistaken. This provision is general and compre-
hensive. It is free from doubt or ambiguity as to its mean-
ing. The exceptions as to attachment, and executions
against adopted citizens, and other persons residing in the
nation who are not citizens, are in derogation of the general
provisions of the statute. The power or right to levy upon
improvements on Indian lands originates with the statute
itself, and exists only to the extent plainly granted. The
statute provides the mode in which these provisions shall
be executed, and that mode must be pursued, and no other.
This conclusion is almost self-evident; for, since the statute
creates and regulates, there is no ground for claiming or
proceeding except according to it. In other words, where a
statute gives a new right and prescribes a particular
remedy, such remedy must be strictly pursued, and all
parties are confined to that remedy. See Sutht.. Cons. St §
325, and numerous authorities cited in notes 3 and 4 therein.

It will be seen that the third or nulla bona paragraph
of the statute does not conflict with the attachment pro-
vision or the execution provision above quoted. If there
were an apparent conflict, by an established canon of con-
struction, of universal application, all the provisions of the
statute must be construed, if it can be done, so as to let each
one stand, and have its full force and effect. Applying this
canon of construction, there is no difficulty in permitting all
three of these provisions to stand. The nulla bona pro-
vision was intended to give an equitable remedy to judgment
creditors who had exhausted an execution, and procured a
nulla bona return; to subject improvements made upon In-
dian lands by adopted citizens and noncitizens of the terri-
tory. It did not extend the attachment and execution pro-
visions to judgment creditors to improvements upon Indian
lands. It simply designated two other and distinct classes,
and gave to judgment creditors a separate and distinct rem-
edy, equitable in its nature, as to them; that remedy to be

administered in a court of equity. It carried with it, also, the ordinary powers of a court of equity to appoint receivers, grant injunctions, and to do whatever a court of equity might incidentally do in the execution of the statute. The point upon which there seems to be some doubt is whether or not, if an adopted citizen, or any other person residing in the Indian country, and not a citizen thereof, should have improvements upon real estate within the Indian Territory, less than 160 acres, occupied as a homestead, the statute under consideration has any application with reference to improvements upon his other real estate, separate and apart from that which he occupies as a homestead. The act does not provide where the judgment debtor shall select his homestead, or whether the homestead shall be in one body, or in bodies contiguous to each other, or in a solid body. It does not provide that the part which is exempt from execution shall be occupied as a homestead. The act does not provide how or in what way the homestead shall be selected. It is not necessary to determine, for the purposes of the case at bar, when he may select it,—whether before the execution shall issue, or after its return, or before the bill in equity is filed, or after the bill is filed,—or whether it may be set apart to him in the decree. Whenever it is done, he is entitled to 160 acres as a homestead, and to be a homestead, it must be occupied by him; and whatever he has in excess of that is subject to the payment of his debts. In construing any statute, the primary rule is to ascertain what the evil was which the legislature sought to correct, and then construe the act liberally to suppress the evil, whatever it was. It is one of the methods laid down in the law books for determining what the intention of the legislature was, and, when all the rules are considered, that which is most fundamental is to get at the intention of the legislature. To do that, sentences are sometimes transposed, and words construed to mean that which is not the ordinary acceptation; the

object of courts being always to carry out, if it can be done, the intent and purpose of the legislature.   No undue weight should be given to the words "in excess."   The meaning of that provision simply was that, if a man had 160 acres which he occupied as a homestead, it was exempt by law from execution.   If he did not have 160 acres which he occupied as a homestead, he could claim what he did have, whether it be 20, 40, or 100 acres, or whether it be a town lot in a city; and nothing was exempt except that which was occupied by him as a homestead, whether such homestead be 160 acres or less. This seems to be the clear and unmistakable purpose of the act, and no other construction is sound or tenable.   The real object which congress sought to attain was to reach the improvements of citizens of the United States who had been adopted in the Indian tribes, either by marriage or act of council, and who had invested their means in improvements upon real estate, and refused to pay their creditors, whether they lived in the territory, or whether they lived in the state from which they removed.   That was the evil which congress sought to remedy, and the act should be construed liberally to suppress that evil.

It is a mistake to confuse this equitable proceeding with what is known as a "bill of discovery."   A bill of discovery might have been filed without this statute, but it could not reach improvements upon Indian lands.   The necessary facts may be embraced in a bill of this kind to make it both a statutory proceeding and a bill of discovery, but the right to subject the land would proceed from the authority given by the statute, and not from the general remedy found in equity to file a bill of discovery of assets belonging to the judgment debtor.   It these two ideas are kept in mind, there is no difficulty about the case at all.   Let us illustrate:   If a bill of discovery had been filed in the state of Arkansas, for instance, to uncover assets belonging to a judgment debtor, based upon a judgment, execution, and

nulla bona return, and after the bill had been filed the plaintiff had discovered that the judgment debtor owned real estate, he need not wait the decree of the court in the suit in equity in order to subject the property to sale. . He might go into the court where the judgment was rendered, and sue out an execution, levy on the estate, and sell it; but he could not do that in the Indian Territory, because the attachment provision and the execution provision both prohibit a man from suing out an execution and selling an improvement on real estate. In this territory, therefore, he is driven to a court of equity, and must proceed in strict comformity with the statute which authorizes a bill to be filed,—it being strictly a statutory proceeding,—to subject the improvements on the real estate of the judgment debtor to the satisfaction of the judgment. It is a remedy under the statute, to subject the improvemnts of a judgment debtor ( he being an adopted citizen of the Indian tribe, or a citizen of the United States, and not a member of any Indian tribe) to the payment of his debts.

The question involved in the case at bar is whether or not this store could be sold under the decree of the court, not under an execution, because an order of sale is not, strictly speaking, an execution. This depends upon the question as to whether or not it was the judgment debtor's homestead. If the decisions under the homestead laws of the United States are examined to ascertain what it takes to constitute a homestead, we will find that a man may have his homestead in a house which he runs as a hotel, he may have it above a store, he may have it in any kind of a building, so long as the value and amount of the lands is not in excess of the statutory provision, whatever it may be. Now, a town lot in Ardmore is not in excess of 160 acres, and there is no limitation by the nulla bona paragraph of the act as to value. So that if this appellant occupied this store as a homestead, or set up claim to it as a homestead, the court .

(51)

would have heard the facts, and ascertained whether it was a homestead or not. If it were, it is exempt from sale, under the nulla bona paragraph of the act. If it were not a homestead, occupied by him as such, then it ought to be subjected to sale, under the statutory provision to which we have referred. Under this statute, where suit is brought against a person occupying a piece of property, to subject it to the payment of a judgment, he has a right to set up in answer that he claims 160 acres of it as a homestead, or, if it does not consist of 160 acres, that he claims the whole of it as a homestead, and if he can show it has been dedicated as such, under the constructions which have been placed upon statutes determining what is a homestead, the courtshould decree it to him, or should, in other words, decree that the property was not subject to sale, because it was his homestead. If he lives upon property in excess of 160 acres of land, he has a right to set up in his answer that he occupies a portion of the land, and claims 160 acres (that part which he occupies) as his homestead; and the court could, by proper decree, set it off to him. He could do this in a proceeding such as is provided for under the nulla bona paragraph of the act, even if there were no statutory provision pointing out the method by which he could set up a claim for his homestead. The very object of the nulla bona paragraph of the act was to bring this whole matter before the court to be dealt with as a court of equity, and to secure to the homesteader such rights as the statute gave him, and to subject the balance of it to the payment of his debts. The whole question may be summed up in this statement: That improvements cannot be attached and cannot be sold at all, except as to the classes of persons named in the statute; but improvements can be sold under a bill in equity, as provided in the nulla bona paragraph of the act, if the improvements belong to adopted or noncitizens of an Indian tribe.

If the bill of discovery in this case, and the proceedings of the court thereunder, had complied with the essential provisions of the nulla bona paragraph of the act above quoted, the judgment of the court below would be affirmed; but, inasmuch as the court disregarded the law of congress in some of its essential provisions, the judgment must be reversed and remanded. The important feature in which the statute was disregarded was that there was no mention in any of the proceedings of the court, or even in the bill of discovery, of the right of the defendant in execution to have a homestead set apart to him; nor was there any investigation had, or even suggested, on that subject. The court ordered the lot in question to be sold, without the limitation required by the statute, that it should be sold only to a member of the tribe. If there were no other error, except that the court ordered the property to be sold, we might take judicial cognizance of the fact that a sale, under the circumstances of this case, would only be a sale of the improvements or the right of occupancy. But the other errors to which reference has been made are sufficient of themselves to require the judgment to be reversed. The judgment is therefore reversed, and the case remanded, with instructions that further proceedings in the case shall be taken in accordance with this opinion.

CLAYTON and TOWNSEND, JJ., concur.