IN RE GRAYSON ET AL.

Opinion delivered April 5, 1901.

*1.  Bankruptcy—Indians—Improvements on Indian Lands—Town Lots.*
    Section 6 of the Bankruptcy Law (Act Cong. July 1, 1898) pro-
    vided that the exemption laws in each state should not be
    changed or disturbed by the enactment of the national bank-
    ruptcy act, and thus left available to bankrupts in the Indian
    Territory the exemption laws of the state of Arkansas put in
    force in the Indian Territory by the Act of Cong. May 2, 1890,
    in addition to the further provisions of this act of Congress ex-
    cepting from execution, attachment or other process all lands
    the title to which is in the Indian tribes, and all improvements
    when owned by an Indian by blood. *Held*, That Indian thereon
    bankrupts in the Indian Territory are entitled to the exemp-
    tions of the Arkansas statute, and their improvements on In-
    dian lands; and this, whether such improvements are on farm
    lands or town lots, where the title to same has not been di-
    vested from the Indian tribe.

Appeal from the United States Court for the Northern
District.

JOHN R. THOMAS, Judge.

Proceedings in bankruptcy by Grayson Bros.  Appeal
from an order refusing final discharge till petitioners should
turn over certain property.  Reversed.

G. W. Grayson and Samuel Grayson are Creek Indians
by blood, and were doing business at Eufaula, an incorpo-
rated town in the Creek Nation, under the firm name and
style of Grayson Bros.  On the 16th day of February, 1899,
they filed their petition in the United States Court at Musko-

gee, Ind. T., praying that they be adjudged bankrupts, etc. The petition was referred to the referee in bankruptcy, and the petitioners were duly declared bankrupts. At the time of filing their petition, besides other property, the petitioners owned the following, which they claimed as exempt: Grayson Bros.' joint property, located at Eufaula, Creek Nation: Store building, appraised at $1,200; gin building, appraised at $350; barn-like building, appraised at $200; printing office, appraised at $150; school-house building, appraised at $250. Individual property of G. W. Grayson: One farm in Creek Nation; one dwelling house in Eufaula, occupied by him and family as a home; one other dwelling house in Eufaula, appraised at $300. Individual property of Samuel Grayson: One farm in Creek Nation; one dwelling house in Eufaula, occupied by him and family as a home; one other dwelling house in Eufaula,—appraised at $450. The United States Court for the Northern District held that the petitioners were entitled to hold as exempt property their farms and the dwelling houses occupied as their homes, together with so much personal property as is exempt from execution under Mansfield's Digest, and refused to finally discharge the bankrupts until they should turn over the balance of their property to the trustee. From this decision the bankrupts appeal to this court.

*Maxey & Martin*, for appellants.

*Eck E. Brook* and *J. S. Davenport*, for appellees.

CLAYTON, C. J. From the foregoing statement of facts it will be observed that in this case there are four classes of property claimed as exempt under the bankrupt laws: First, improvements on Indian farming lands; second, improvements erected by the individual partners upon town lots in an incorporated town, and occupied by them as homes;

third, other improvements on lots in the same town, not occupied or claimed as homesteads; and, fourth, personal property. As to the improvements of the individual partners upon the town lots occupied by them as their homes, and the exemptions of their personal property, there is no contention. All agree that, whatever view may be taken of this case, the bankrupts are entitled to these as exempt. The proposition presented for our determination is: Are improvements erected by Indians by blood on Indian lands and on city lots, not claimed as homesteads in this territory, exempt under the bankrupt laws? We see no reason, under the present conditions which exist here, why the bankrupt laws may not apply to Indians engaged in business transactions as well as to aliens; but it must be conceded that, if they may take the benefits of the law, they must conform to its provisions and perform its conditions. The bankrupt law itself does not specially name the property to be exempt to the bankrupt. Section 6 of the act provides: "That this act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition, in the state where they have had their domicile for six months, or the greater portion thereof, immediately preceding the filing of the petition." By this provision congress probably intended to adopt the exemption laws of the territory as well as the states. See Loveland, Bankr. p. 333, § 177. But, whether this be true or not, as the exemption laws of this territory are prescribed by act of congress, it cannot be presumed that they are not available under proceedings in bankruptcy. Section 31 of the act of congress approved May 2, 1890, entitled "An act to provide a temporary government for the territory of Oklahoma, and for other purposes," among other things extends over this territory chapter 60 of Mansfield's Digest of the Laws of Arkansas (chapter 26, Ind. T. Ann. St. 1899), and this law is as much an act of congress as if enacted in

*Bankrupt entitled to exemptions under Arkansas Law.*

hæc verba. But by the following paragraph of the same act it is provided: "That no attachment shall issue against improvements on real estate while the title to the land is vested in any Indian nation, except where such improvements have been made by persons, companies or corporations operating coal or other mines, railroads or other industries, under lease or permission of law of an Indian national council, or charter, or law of the United States. That executions upon judgments obtained in any other than Indian courts shall not be valid for the sale or conveyance of title to improvements made upon lands owned by an Indian nation, except in the cases wherein attachments are provided for. Upon a return of nulla bona, upon an execution upon any judgment against an adopted citizen of any Indian tribe, or against any person residing in the Indian country and not a citizen thereof, if the judgment debtor shall be the owner of any improvements upon real estate within the Indian Territory in excess of one hundred and sixty acres occupied as a homestead, such improvements may be subjected to the payment of such judgment, by a decree of the court in which such judgment was rendered. Proceedings to subject such property to the payment of judgments may be by petition, of which the judgment debtor shall have notice as in the original suit. If, on the hearing, the court shall be satisfied from the evidence that the judgment debtor is the owner of improvements on real estate, subject to the payment of said judgment, the court may order the same sold, and the proceeds, or so much thereof as may be necessary to satisfy said judgment and costs, applied to the payment of said judgment; or if the improvement is of sufficient rental value to discharge the judgment within a reasonable time, the court may appoint a receiver, who shall take charge of such property and apply the rental receipts thereof to the payment of such judgment, under such regulations as the court may prescribe. If under such proceedings any improvement is sold, only citizens of

the tribe in which said property is situated may become the purchaser thereof.'' The clear intent of congress in the enactment of this statute was: First, to extend over this territory the execution and exemption laws of the state of Arkansas; and, secondly, to except from the provisions of the Arkansas law all lands the title to which is in the Indian tribes, and the improvements erected thereon. Of course, Indian lands are not subject to sale under execution; and the statute provides that all improvements erected upon them, when owned by an Indian by blood, shall be exempt. But, if the improvements be owned by a person operating coal or other mines, railroads or other industries, under lease or permission of law of an Indian national council, or charter, or law of the United States, or by a person not a citizen of the tribe, or only a citizen by adoption, then the improvements upon 160 acres of land only are exempt; and any surplus may be subjected to the payment of the owner's debts. In this case the bankrupts being Creek Indians by blood, are clearly entitled to have exempted to them the improvements on their farming lands owned by them, and erected on lands the title to which is in the Creek nation. Whether the same rule is to prevail as to improvements owned by Indians by blood on town lots depends upon an answer to the question, ''Is the title to the lands upon which these improvements are located in a town of the Creek nation still in that nation, or has it been devested from it?'' If the title is in the nation, then by the very terms of the act of congress above quoted the improvements of these Creek Indians by blood upon their town lots are exempt, and that, too, independent of the fact as to whether they are used as a home, a storehouse, or for any other purposes. The test is, not the locality, or the uses to which the improvements are to be applied, but are they upon lands the title to which is in the Creek nation, and owned by persons in whose veins the blood of an Indian flows. The question then, is, is the Creek na-

tion vested with the title to the lands in the town of Eufaula, on which the improvemennts of these bankrupts are situated? Whatever may be the effect of the fifteenth section of the Curtis bill when carried into operation, it is certain that the Creek title to the lands on which towns are built remains in that nation until it may be devested by compliance with the provisions of that section; and, as far as the town of Eufaula s concerned, there has been no such consummation of the provisions of that section as to devest the nation of its title to the lands; and whatever inchoate rights or equities may have sprung up by virtue of the Curtis bill as to white own-ers of improvements on town lots, the Indian by blood owning an improvement on a lot in the town of Eufaula stands, as far as the question in this case is concerned, with his Indian rights unimpaired. He is the Indian owner of improvements on lands the title to which is vested in his tribe, and there-fore such property, whether held as a homestead or other-wise, is, in our opinion, exempt from the bankrupt law. The judgment of the court below is therefore reversed as to its findings that the said town property was liable to execution and sale for the payment of the debts of the said bankrupts, and in refusing to grant them their discharge. In all other things the judgment below is affirmed. Let the cause be re-manded, with instructions to the court below to grant to the bankrupts their final discharge.

TOWNSEND and GILL, JJ., concur.

*Improve-ments on In-dian lands ex-empt to In-dian Bank-rupt.*