CROWELL, et al vs YOUNG, et al.

Opinion delivered October 4, 1901.

1. *Indian Laws—Indian Lands—Ownership—Improvements.*

Under Article 1, Section 2, Cherokee Constitution, and Cherokee Law, 1892, p. 351, the lands within the Nation remain the property, absolutely, of the Nation; but rights of possession and occupancy thereof, and improvements thereon may be owned by Cherokee citizens. They cannot, however, sell or rent any such lands or

improvements to any person not also a citizen under penalty of punishment for misdemeanor.

2. *Indian Lands—Mortgages—Jurisdiction of U. S. Courts.*

Act of Congress May 2, 1890, Section 29, gives the U. S. Courts in Indian Territory jurisdiction of all cases of contracts between citizens of such nation and citizens of the United States, provided such contracts are made in good faith and in accordance with the laws of such tribe or nation. *Held*, that a sale or lease of land or of improvements on Indian lands to a non-citizen is void, but, in an equitable action to foreclose a mortgage thereon, such mortgage is not a sale, but has only, in equity, the effect of a lien and hence is not void, under the laws cited.

3. *Indian Lands—Judgments—Execution Sales.*

Act of Congress May 2, 1890, (26 Stat. 94) provides that executions upon judgments obtained in other than Indian Courts shall not be valid for the sale of improvements upon lands owned by an Indian nation, except in cases wherein attachments are provided for. *Held*, that this includes judgments of courts of equity and sales under decrees thereof, and that a court of equity has no jurisdiction to enforce satisfaction of a mortgage lien, in itself valid, by the sale of improvements on Indian lands.

4. *Equity—Dismissal of Action on Failure of Jurisdiction.*

In an action upon certain notes, and for foreclosure of a mortgage securing same, and appointment of a receiver, when it appears that the foreclosure of the mortgage cannot be proceeded with, for want of jurisdiction, then the bill should be dismissed, and party left to his action at law upon his notes.

Appeal from the United States Court for the Northern District.

W. M. SPRINGER, Judge,

Suit to foreclose a mortgage by F. M. Crowell and another against J. W. Young and others. Decree sustains a demurrer to complaint. Plaintiff appeal. Modified.

The appellants' complaint in equity alleges that the defendants (appellees here) and plaintiff Crowell are Cherokee Indians, and that the plaintiff Blevins is a citizen of the United States; that on the 13th day of September, 1895, the defendants, being indebted to plaintiffs in the sum of $1,677.50, executed to plaintiffs their promissory note for that sum, and upon the same day, to secure the payment of said note, and another indebtedness of $100 upon account, they executed to plaintiffs a mortgage upon a certain farm and improvements and personal property, all located and being in the Cherokee Nation; that the amount due has, by payments and credits, been reduced to the sum of $863.50, with interest thereon from April 19, 1898, at 10 per centum per annum; and that defendants are insolvent. The prayer of the bill is: First, for judgment against defendants for the amount due, with interest; second, that a receiver be appointed to take charge of the mortgaged premises during the pendency of the suit; and third, that the interest of the defendants in the said premises be sold, etc. To the complaint the defendants filed a demurrer, setting up the following grounds: "(1) That the said complaint does not state facts sufficient to constitute a cause of action; and (2) that the said complaint does not state facts sufficient to entitle the plaintiffs to any relief in equity." The court sustained the demurrer, and, the plaintiffs refusing to plead further, entered judgment for defendants. To the sustaining of the demurrer and the entering of judgment for defendants the plaintiffs saved their exceptions, and duly appealed to this court.

*W. H. Kornegay* and *J. S. Davenport*, for appellants.

*George B. Denison* and *Frank L. Sharp*, for appellees.

CLAYTON, J. The court below entertained the opinion that a Cherokee Indian could not execute a valid mortgage to a citizen of the United States upon his premises located in the Cherokee Nation, and as the plaintiff Blevins, one of the mortga-

gees named in the mortgage, was a white man, held, therefore, the mortgage to be void. And this is the only question of dispute in the case.

The constitution of the Cherokee Nation provides: "The lands of the Cherokee Nation shall remain common property; but the improvements made thereon, and in the possession of the citizens of the nation, are the exclusive and indefeasible property of the citizens respectively who made them, or may rightfully be in possession of them: provided, that the citizens of the nation possessing exclusive and indefeasible right to their improvements, as expressed in this article, shall possess no right or power to dispose of their improvements, in any manner whatever, to the United States, individual states, or to individual citizens thereof." Const. Cher. Nat. art. 1, § 2. The Cherokee statute provides that: "It shall not be lawful for any citizen of the Cherokee Nation to sell any farm, or other improvement in said nation, to any other person than a bona fide citizen thereof; nor shall it be lawful to rent any farm or other improvement in this nation to any person other than a citizen of the Indian Territory; and every person who shall offend herein shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall suffer punishment by fine in any sum not less than ten dollars, nor exceeding five hundred dollars, or in default of payment, by imprisonment for any term not exceeding one year." Cher. Law 1892, p. 351. Act Cong. May 2, 1890, § 29 (26 Stat. 81, 93; Ind. T. St. 1899, pp. 7, 8), provides that the United States courts in the Indian Territory shall have jurisdiction of "all cases of contracts entered into by a citizen of any tribe or nation, with citizens of the United States, in good faith and for a valuable consideration, and in accordance with the laws of such tribe or nation, and such contracts shall be deemed valid and enforceable by such courts." There is no doubt but that by the Cherokee constitution and statute a sale or lease of land, or improvements on the same, by a Cherokee to a citizen of the United States, is not in accordance with the laws of such tribe, and there-

fore, under the statute of May 2, 1890, above set out, cannot be enforced in our courts. Such contracts are void. And if a mortgage executed by a Cherokee citizen to a citizen of the United States, and placed upon such lands or improvements, is to be considered as a sale of such lands to the mortgagee, it is void. But in a court of equity, in which tribunal this suit was brought, is a mortgage a sale to the mortgagee? It is conceded that in a court of law it would be considered a conveyance of a defeasible estate, but in equity it is only deemed to have the effect of a lien. Mr. Tiedeman, in his work on Real Property (section 300), says: "As a result of this equitable jurisdiction, mortgages assumed in equity a different character from what they had in law. Equity seized hold of the real intention of the parties, and construed the mortgage to have only the effect of a lien, instead of vesting a defeasible estate in the land. This equitable construction conforms more nearly to the purposes and desired effect of a mortgage. It is given only to secure the payment of a debt or the performance of some obligation, and its ends are satisfied if, after condition broken, means are provided to the mortgagee for satisfying his claim by an appropriation of the land, while in the interim his interests are protected against any subsequent conveyance of the land. All this is attained by a lien. Equity therefore held the mortgage to be a lien upon the land, and not an estate in it." See Hannah vs Carrington, 18 Ark. 85, and other authorities cited in note 1. Mr. Kent, in his fourth volume of his Commentaries (page 160), says: "The equity doctrine is that the mortgage is a mere security for the debt, and only a chattel interest, and that until a decree of foreclosure the mortgagor continues the real owner of the fee. The equity of redemption is considered to be the real and beneficial estate, tantamount to the fee at law; and it is accordingly held to be descendible by inheritance, devisable by will, and alienable by deed, precisely as if it were an absolute estate of inheritance at law." And this is the undoubted rule in equity. And, therefore, by the law of the tribunal in which this case was tried, the execution of the mortgage was not a sale, and

not in violation of the laws of the Cherokee Nation, and after foreclosure, when the premises come to be sold, none but Cherokees can bid, because none but Cherokees can lawfully buy; none other could take title; and the commissioner's deed, confirmed by the court, would be executed to a Cherokee buyer, who would take title; and so, from beginning to end, the very letter as well as the spirit of the Cherokee law would be held inviolable.

But we are confronted with the act of congress of May 2, 1890, entitled "An act to provide a temporary government for the territory of Oklahoma, to enlarge the jurisdiction of the United States court in the Indian Territory, and for other purposes," the thirty-first section of which, among other things, provides: "That executions upon judgments obtained in any other than Indian courts shall not be valid for the sale or conveyance of title to improvements made upon lands owned by an Indian nation, except in cases wherein attachments are provided for." 26 Stat. 94 (Ind. T. St. 1899, p. 9). This provision applies to improvements of Indians by blood, erected upon lands the title of which is in the Indian tribe. And, when the evident purpose of the act is taken into consideration (that is, that improvements erected by such Indians or Indian lands were to be sold by judicial sale only under the judgments of their own courts), it must be conceded it applies as well to sales under decrees in chancery as to judgments at law; that is, that the word "judgment" is used in the statute in its comprehensive sense, embracing not only judgments at law, but also definitive decrees and orders in the nature of judgments, decreeing the sale of Indian improvements so situated. See And. Law Dict. tit. "Judgments." And therefore in this case the improvements sought to be subjected to sale by the decree of the court, having been erected by and being the property of Indians, and erected on Indian lands, can no more be condemned to sale under the decree of the court because of the fact that in the forum the mortgage is but a lien, than if it were a sale, not because of the fact that the contract was in violation of

the Cherokee constitution and laws, but because of the fact that
the laws of the United States deny jurisdiction to its courts to en-
force, by a sale of the mortgaged premises, such contracts.    We
have held that such premises and improvements were exempt from
sale under the bankrupt laws for this reason.    In re Grayson,
3 Ind. Ter. Rep. 497, (61 S.W. 984.)    And therefore we hold that
as to the foreclosure of the mortgage the court was without juris-
dction.

It is claimed that the court should have decreed the pay-
ment of the notes.    But it could not have done this, because the
proceedings for the foreclosure of the mortgage alone gave juris-
diction to equity, and when that fell the whole case in that forum
fell with it.    The court then had no jurisdiction to hear the other
branch, for, with the mortgage out, nothing was left but an action
at law.    The case of Dowell vs Mitchell, 105 U. S. 430, 26 L. Ed.
1142, was a suit commenced by a bill in equity to foreclose a
mortgage executed upon real property to secure the payment of
certain notes.    The proof showed that the mortgagor was not the
owner of the property at the time the mortgage was executed. .
The United States circuit court dismissed the bill as to the fore-
closure of the mortgage, and rendered judgment on the notes.
The supreme court of the United States, reversing the case, say:
"When this fact (that the mortgagor was not the owner of the
property) was established by the evidence, the court below,
sitting as a court of equity, had no jurisdiction to proceed in the
cause.    There was nothing on which it could act but the promis-
sory notes, and to enforce the payment the complainant had a
plain, adequate, and complete remedy at law."    "The rule is that
when a cause of action cognizable at law is entertained in equity
on the ground of some equitable relief sought by the bill, which it
turns out cannot, for defect of proof or other reason, be granted,
the court is without jurisdiction to proceed further, and should
dismiss the bill without prejudice."    And therefore in this case
the court below did not err in sustaining the demurrer to the com-
plainant.    But the decree of the court is "that the plaintiffs take

nothing by their suit, and that defendants recover their costs."
And this is such a final decree as would  be a bar to future re-
covery by the plaintiffs, which is error, because the plaintiffs still
have left their action at law upon the notes.   Therefore the
decree of the court below is affirmed in so far as the sustaining of
the demurrer is concerned, but, the form of the decree being
erroneous, the cause is reversed as to that, and remanded, with
directions to the court below to enter its decree dismissing the bill
without prejudice, and at plaintiffs' cost.

TOWNSEND, C. J., and GILL and RAYMOND, JJ., concur.