HAMPTON et al, vs MAYS et al.

Opinion delivered September 25, 1902.

1. *Indian Lands—Improvements—When Exempt from Execution Sale.*

    The inhibition against execution sale of improvements on Indian lands contained in Section 31, Act of Congress, June 28, 1898, applies only to improvements owned by Indians by blood and not to adopted and intermarried citizens.

2. *Improvements on Indian Lands—Judicial Sale of—Proceedings for Must be had in Court of Equity.*

    Proceedings had under Section 31, Act of Congress, June 28, 1898, to subject improvements on Indian lands to judicial sale must be in a court of equity; but where the decree of sale is rendered in an action to enforce a vendor's lien originally brought in equity, it is not necessary to begin another suit in the same forum for the enforcement of the decree.

3. *Improvements on Indian Lands—Judicial Sale—Return of Execution Nulla Bona Unnecessary.*

    Though Sec. 31, Act of Congress, June 28, 1898, requires that an execution must be issued and returned nulla bona before proceedings are begun to subject improvements on Indian lands to execution sale, this only refers to judgments at law and such return is not necessary where the sale is sought to satisfy a decree in equity.

4. *Writ of Assistance—Injunction—Jurisdiction.*

    In an action, in equity, to subject certain improvements on Indian lands to judicial sale, final decree was rendered ordering such sale, and the sale was completed. An injunction was then granted by another judge in the same district staying proceedings to acquire possession. *Held,* that the injunction was void, under Section 3751 Mansfield Digest (2510 Ind. T. Stat.), notwithstanding the party enjoined appeared and pleaded in the injunction proceeding; and a writ of assistance was properly issued by the court in which the sale was decreed.

Appeal from the United States Court for the Southern District.

Hosea Townsend, Judge.

Proceedings by Mays & Williams and another against Wade Hampton and others. From an adverse order, the latter parties appeal. Affirmed.

The proceedings in this case were commenced by the bringing of a suit in the United States Court for the Southern District of the Indian Territory (Judge Townsend presiding) by the appellees Mays & Williams against the appellant Wade Hampton upon a promissory note of $1125, the purchase price of an improvement on Indian lands. Hampton, the defendant, in the suit, was a white man. The case, originally brought at law, was transferred to the equity side of the docket. The plaintiff recovered, and, pursuant to the statute, a vendor's lien was declared. From this decree an appeal was taken to this court, and the decree of the court below was affirmed. See Hampton vs. Mayes, 3 Ind. Ter. Rep. 65, (53 S. W. 483.) The case was then appealed from here to the United States circuit court of appeals for the Eighth circuit, and there dismissed for a failure to comply with the rules of that court, and a mandate was sent down to the court below, commanding it to proceed with the case in accordance with law. After legal notice, the premises were then sold by the marshal in accordance with the commands of the decree, and the appellee Samuel J. Garvin, became the purchaser. A few days thereafter the appellants filed their complaint in equity in the United tSates court for the Southern District at Pauls Valley (Judge Thomas presiding) against the appellee Garvin, praying that he be enjoined from taking possession of the land and improvements so purchased. The defendants in that suit filed his demurrer to the complaint which was overruled. He then filed a plea to the jurisdiction of

the court, setting up, among other things, the decree declaring the lien and ordering the sale, rendered by Judge Townsend, of the court at Ardmore, and exhibiting the said decree and orders pertaining thereto. To this plea the plaintiffs in that suit filed a demurrer, which was sustained, and, the defendant refusing to further plead, a decree in accordance with the prayer of the complaint was rendered. Mays & Williams the plaintiffs in the original suit at Ardmore, and Garvin, the defendant in the injunction at Pauls Valley, then filed a motion in the court at Ardmore for a writ of assistance and possession, directing the marshal to evict and remove from the possession of the premises the defendant, Wade Hampton, and others who entered upon them pendente lite. To this motion the appellants appeared and filed their objection, setting up, among other things, the decree of injunction obtained from the court at Pauls Valley. These objections were overruled, and the writ ordered to issue, to all of which the appellants excepted, and from which order they have regularly taken their appeal.

*Albert Rennie*, for appellants.

*Geo. M. Miller, Claude Weaver*, and *Herbert & Cannon*, for appellees.

CLAYTON, J. The appellants' assignment of error is as follows: "The court erred: First, in overruling the objections of the appellants to the confirmation of sale; second, in granting appellee's motion for the writ of assistance; third, in issuing the writ of assistance; fourth, in overruling the appellants' motion to vacate the order granting the writ of assistance." As the appellant's brief is short and concise, for the purpose of more fully showing, than is done by the specifications of error, the exact questions raised in the case, we will set it out in full. It is as follows: "Appellants' contention, concisely stated, is that,

although appellees obtained a decree for the sale of the lands
and premises described in their complaint, they could proceed
no further on account of the inhibition contained in section 31,
Act Cong. May 2, 1890, (§ 31, Ind. Ter. St. 1899), and under the
authority of the case of Crowell vs Young, 4 Ind. Ter. Rep. p.
(64 S. W. 607), decided by this honorable court October 4, 1901.
In the case of Crowell vs Young, this court decided that, because
no execution or order of sale could issue to make effectual any
judgment or decree that might be rendered, therefore the parties
seeking to foreclose their lien could not proceed to judgment.
In the case at bar, appellant's ask the court to go no further than
the letter of the law, but ask the court to say that they can
render no assistance to appellees in the way of ordering a sale,
or assisting the purchaser at this pretended sale in gaining pos-
session of the lands and premises, the title to which is in the
Choctaw and Chickasaw Nations, and, further, that the pur-
chaser, Samuel J. Garvin, one of the appellees herein, his agents
and hirelings, having been enjoined by a court of competent
jurisdiction, could proceed no further without first disposing of the
injunction against them." From the above assignment of error
and brief of appellants, it will be seen that there are but two
propositions presented for our determination. They are, as con-
tended: First, that by virtue of section 31, Act Cong. May 2,
1890 (section 31, Ind. Ter. St. 1899), improvements on Indian
lands cannot be subjected to sale by judgments or decrees of
the United States court; and, second, that as to the defendant
Garvin, this action of his in procuring the writ of asistance had
been previously enjoined by a court of competent jurisdiction.

As to the first proposition, the appellants rely on our de-
cision handed down in the case of Crowell vs Young, cited in
brief. In that case we did not decide that no improvements
erected on lands to which the Indian tribes held title could be
sold. We limited it only to those improvements which had been

erected upon Indian lands and were held by Indians by blood, holding inferentially, at least, that all other improvements might be subjected to sale under such judgments and decrees; and this we understand to be the meaning of the statute. While the statute does not use the term "Indians by blood," we think that no other meaning can be given to it. The statute reads: "That executions upon judgments obtained in any other than Indian courts shall not be valid for the sale or conveyance of title to improvements made upon lands owned by an Indian nation, except in case where attachments are provided for." And in the case of Crowell vs Young we have held that this applies to decrees in equity as well as to judgments at law. And if the statute had stopped there, no improvement of any kind, by whomsoever erected or owned, except in cases wherein attachments are provided for, could be sold to satisfy the judgments or decrees of any court, save those rendered by the Indian courts. But the statute does not stop there. It makes an exception. It proceeds: "Upon return of nulla bona upon an execution upon any judgment against an adopted citizen of any Indian tribe, or against any person residing in the Indian country and not a citizen thereof, if the judgment debtor shall be the owner of improvements upon real estate within the Indian Territory, in excess of one hundred and sixty acres occupied as a homestead such improvements may be subjected to the payment of such judgment by a decree of the court in which such judgment was rendered." Then follows this language. "Proceedings to subject such property to the payment of judgments may be by petition, of which the judgment debtor shall have notice as in the original suit. If on the hearing the court shall be satisfied from the evidence that the judgment debtor is the owner of improvements on real estate subject to the payment of said judgment, the court may order the same sold," etc. In the case of Mays vs Freiburg, 3 Ind. Ter. Rep. 774 (49 S. W. 52), we have held that such proceedings must be had in equity. But when

the original suit is brought in that forum, there is no necessity to go out and bring another suit in the same forum to enforce the decree. It is already in the forum provided by law. But these proceedings to subject these improvements to sale for the satisfaction of judgments and decrees do not apply to every owner of improvements in the Indian Territory, for the statute itself has made a distinction. It first declares generally that no "improvements" made upon lands owned by an Indian nation, except in cases wherein attachments are provided for, shall be sold under any order of a court, except an Indian Court; and then, as if the word "except" or "provided" had been introduced in the statute, it provides that improvements placed upon Indian lands, and owned by "adopted citizens of any tribe" and "noncitizens," may, by the procedure provided by the act, be sold. And by the phrase "adopted citizens" is meant all citizens not of the blood; that is, those who have been adopted by the nation, either by treaty or by act of an Indian legislature. Those who have been adopted by treaty are intermarried white men and negroes who were slaves to an Indian, and their descendants. These, with those persons who may have been adopted by act of council, and the Indians by blood, constitute the entire citizenship of these Indian nations; and, therefore, if you eliminate from the general provisions of the statute the adopted citizens and noncitizens, you leave none for that clause of the statute to operate upon except the citizens by blood; and, therefore, by the provision of the statute, their improvements, and theirs alone, are excepted from sale under the judgments and decrees of United States courts, except in cases where attachments are provided for. And as Wade Hampton, the defendant in the original suit, was not an Indian by blood, but a noncitizen, his improvements were subject to judicial sale to satisfy any proper judgment or decree which might be legally rendered against him in the United States courts of the Indian Territory. And this is in harmony with

our decision in Crowell vs Young. The court below, therefore, had jurisdiction to decree the sale of the improvements, and it necessarily follows that it had the power, by its writ of assistance, to put the purchaser at the judicial sale in possession. But it is claimed that the proceedings to subject these improvements to the satisfaction of judgments and decrees by sale can only be had after the issuance of an execution and a nulla bona return. And it is true that the statute does so provide, but this provision clearly refers only to judgments at law, and such decrees in equity as in this jurisdiction are enforced solely and only through an execution. It can have no relation to the enforcement of a lien in equity, because equity in the enforcement of a lien does not resort to that writ, but proceeds directly against the premises or property upon which the lien is fixed, by decreeing a sale thereof. In such cases the order of sale, commanding the execution of the decree, is the marshal's writ. It is, in effect, a writ of execution, and therefore, before the decree, no return equivalent to nulla bona on an execution at law can be made upon it. And if the premises or property be found, no such return could ever be made; and, therefore, in such case, if the court must wait for such return, it must wait forever; and, if the premises or property cannot be found, it cannot enforce the decree, for the want of a subject for it to operate upon, and so in neither event could the decree be enforced at all. And it cannot be conceived that congress intended that the improvements of the class of persons designated by the statute should be subject to sale to satisfy a judgment at law founded upon a mere contract or debt, and the same property be exempt from sale under a decree to enforce a lien created by contract of the parties or by operation of law.

The second proposition, and the last for consideration, is, as contended for, that the appellee, Garvin, the purchaser at the sale, having been enjoined by a decree of the court at Pauls

Valley from procuring a writ of assistance to obtain possession of the improvements, and that decree being final and not appealed from, the court below erred in ordering the issuance of the writ. If the court at Pauls Valley had jurisdiction of the parties to and the subject-matter of the suit, the position is certainly well taken. But did it have jurisdiction of the subject of the controversy? The injunction suit at Pauls Valley was instituted for the purpose, and the decree, if valid, had the effect, of staying the proceedings on the final decree of the court at Ardmore. The original suit was instituted at, and the decree was rendered in, a court having jurisdiction of the parties and the subject-matter of the controversy. It had rendered a valid decree ordering the sale of the premises. The case had been appealed to the higher courts and affirmed. A mandate had gone down to the Ardmore court, in effect commanding it to execute its degree, when the defendant in that suit, having lost his case, abandoned the court in which it was pending, and sought another within the same jurisdiction, but presided over by another chancellor, and there procured a decree staying the proceedings on a final decree in the other court. Here we have presented the anomalous proceedings of one court of equity attempting to stay the proceedings on the final decree of another. This cannot be done. The statute forbids it. Section 3751, Mansf. Dig. (§ 2510, Ind. Ter. St. 1899), provides that "an injunction to stay proceedings on a judgment or final order of a court shall not be granted in an action brought by the party seeking the injunction in any other court than that in which the judgment or order was rendered or made." The court at Pauls Valley had no jurisdiction to try the issue, and its decree was a nullity. The fact that the defendant to the injunction suit appeared and pleaded to the complaint may have given the court jurisdiction of his person, but it gave to it no jurisdiction over the subject-matter of the controversy, nor power to do a thing forbidden by law. The decree of injunction being void,

neither the defendant in that suit nor the court at Ardmore were bound to respect it.

Finding no error in the proceedings below, its action in all things.pertaining to the suit is affirmed.